IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:21-cv-394

HERMENA MILES BUMPASS,                         )
as Administratrix of the Estate of J'Mauri Jysha )
Bumpass and in her individual capacity, and    )
Individual capacity, and                        )
JERRY JEROME BUMPASS, JR.                       )
In his individual capacity,                     )
                                                )
    Plaintiffs,                              )
                                                )  DEFENDANTS' BRIEF IN
  vs.                                         )  SUPPORT OF MOTION TO
                                                )   DISMISS AMENDED
                                                )    COMPLAINT
                                                )
CLARENCE F. BIRKHEAD,                           )
in his individual capacity and in his official  )
capacity as Sheriff of Durham County,           )
DURHAM COUNTY, ANTHONY L. SHARP, JR., )
in his individual capacity, ROBERT W. OSBORNE   )
III, in his individual capacity, BRENT CRIDER, in )
his individual capacity, BRYCE D. MEYERS, in his )
individual capacity, JIMMY D. BUTLER, in his    )
individual capacity, and TRAVELERS CASUALTY     )
AND SURETY COMPANY OF AMERICA,                  )
                                                )
    Defendants.                              )

---

## I    STATEMENT OF THE MATTER

This action is brought under 42 U.S.C. § 1983, along with state claims, by Hermena Miles Bumpass, in her individual capacity and as the Administratrix of the Estate of J'Mauri Jysha Bumpass, and Jerry Jerome Bumpass, Jr. [*See* Amended Complaint].

1

J'Mauri Bumpass died on December 15, 2019 from a fatal gunshot wound to his head during a traffic stop. *Id*. at ¶ 2.

In its Amended Complaint, the Plaintiffs sued Durham County,[1] Durham County Sheriff Clarence F. Birkhead, in his individual and official capacities, and Sheriff's Deputies: Anthony L. Sharp, Jr., Robert W. Osborne III, Brent Crider, Bryce D. Meyers, Jimmy D. Butler, all in their individual capacities, and Travelers Casualty and Surety Company of America, as Surety. [*See* Amended Complaint].

On June 8, 2021, in response to the original Complaint, Defendants filed a Motion to Dismiss all claims, Motion to Strike portions of the Complaint, and filed supporting briefs detailing the bases for the motions. [*See* Docs. 14 - 17]

In response to the legal shortcomings identified by the Defendants in its Motion to Dismiss, Plaintiff filed an Amended Complaint and Responses to Defendants' Motions, arguing that the Amended Complaint rendered Defendants' Motions moot. [*See* Docs.18 - 22]

In its Amended Complaint, the Plaintiffs allege the following claims for relief:

First Claim: 42 U.S.C. § 1983 claim alleging Excessive Force resulting in the death of J'Mauri Bumpass against Defendants Sharp and Osborne. [*Id*. at ¶¶ 264-276];

Second Claim: 42 U.S.C. § 1983 claim alleging Cover Up of Use of Excessive Force against Defendants Birkhead, Sharp, Osborne, Crider, Meyers, and Butler in violation of the Fourteenth Amendment. [*Id*. at ¶¶ 277-290];

---

[1] Durham County was not a named defendant in the original Complaint [Doc. 1]

<u>Third Claim</u>: 42 U.S.C. § 1983 claim alleging Defendant Sheriff Birkhead's and Defendant Durham County's Policy of Covering Up Use of Excessive Force Caused the 4th Amendment Violation. [*Id*. at ¶¶ 291-299];

<u>Fourth Claim</u>: 42 U.S.C. § 1983 claim alleging Defendant Sheriff Birkhead's and Defendant Durham County's Policy of Covering Up Use of Excessive Force Caused the 14th Amendment Violation. [*Id*. at ¶¶ 300-305];

<u>Fifth Claim</u>: Wrongful Death by Intentional Assault and Battery against Defendants Sharp and Osborne. [*Id*. at ¶¶ 306-312];

<u>Sixth Claim</u>: Common Law Obstruction of Justice against Defendants Birkhead, Sharp, Osborne, Crider, Meyers, and Butler. [*Id*. at ¶¶ 313-317];

<u>Seventh Claim</u>: Reckless Infliction of Emotional Distress against Defendants Birkhead, Sharp, Osborne, Crider, Meyers, and Butler. [*Id*. at ¶¶ 318-322];

<u>Eighth Claim</u>: Action on Official Bond against Defendants Birkhead and Travelers Casualty and Surety Company of America. [*Id*. at ¶¶ 323-330];

The Defendants filed Motions to Dismiss the Amended Complaint pursuant to Rules 12(b)(1), (2), and (6) for lack of personal and subject matter jurisdiction based upon qualified, governmental, and public official immunities and for failure to state a claim upon which relief can be granted for the following reasons: 1) there is no municipal liability without an underlying Constitutional violation and the Plaintiffs fail to make any factual allegations about unconstitutional policies or practices of the Sheriff's Office or Durham County; 2) the Amended Complaint contains no factual allegations to support the

individual capacity claims against Defendants Birkhead, Sharp, Osborne, Crider, Meyers, and Butler that are sufficient to defeat qualified immunity; 3) there are no factual allegations of constitutional violations by Defendants Durham County, Birkhead, Sharp, Osborne, Crider, Meyers, and Butler; and 4) the allegation that Defendants Sharp and Osborne caused the death of the decedent is a conclusion reached by Plaintiffs based entirely on speculation, with no factual allegations to support such a conclusion.

## II    <u>STATEMENT OF THE FACTS</u>

On December 15, 2019, J'Mauri Bumpass was driving a Chevrolet Impala with a license plate registered to a Honda Accord. [Amended Complaint, ¶¶ 80]  At approximately 12:39 am, Defendants Sharp and Osborne pulled over Mr. Bumpass on Meriwether Drive in Durham for a fictitious license plate and an inactive driver's license. [*Id*. at ¶¶ 87, 125]

As the officers began to exit the vehicle, they heard a gunshot. [*Id*. at ¶¶ 90, 127] After the gunshot, Mr. Bumpass' car "overturned multiple times." [*Id*. at ¶ 91]

Defendants Sharp and Osborne called for backup and were behind their patrol cars when backup arrived. [*Id*. at ¶¶ 91, 94]  A Glock semi-automatic handgun was found in the car in between Mr. Bumpass' legs. [*Id*. at ¶¶ 104, 133] A 9-millimeter shell casing, fired from the Glock firearm, was found in Mr. Bumpass' car. [*Id*. at ¶ 146]

The medical examiner found that Mr. Bumpass suffered a "fatal contact gunshot wound to the head, a bullet having entered the right side of his skull and exited the left side." [*Id*. at ¶ 123] The medical examiner ruled his death a result of a close-range gunshot wound, consistent with suicide. [*Id*. at ¶¶ 196, 200]

4

The guns of Defendants Sharp and Osborne were examined and it was determined that the "officers' service magazines were fully loaded and that no Sheriff's Office bullets appeared to be missing." [*Id.* at ¶ 142] Gun Shot Residue (GSR) tests performed on both defendants Sharp and Osborne did not determine the presence of gunshot residue on either defendant. [*Id.* at ¶ 153]

The Durham County Sheriff's Office provided as much information as legally possible to the Bumpass family, although the matter was under investigation. The in-car camera system was inoperable on Defendant Sharp's car, but the Sheriff's Office provided Plaintiffs with a thumb drive containing the recordings from another Sheriff's vehicle that arrived at the scene, despite no legal obligation to do so at that time. [*Id.* at ¶ 218] Members of the Sheriff's Office even met with the Bumpass family, along with their counsel, multiple times. [*Id*. at ¶¶ 205, 237, 254] Plaintiffs never personally spoke with Sheriff Birkhead and any representations by the Sheriff's Office in court were made by the Sheriff's Office Legal Advisor. [*Id*. at ¶¶ 62, 259, 260][2]

III   **STATEMENT OF THE QUESTIONS PRESENTED**

    A.   Whether Plaintiffs pled viable claims against Defendant Birkhead in his official capacity under 42 U.S.C. § 1983 where the Plaintiffs failed to allege any policy or custom of the Sheriff's Office that was the driving force behind Mr. Bumpass' death?

---

[2] While Defendants recognize that the Amended Complaint supersedes the original Complaint, it is important to note that, in the original Complaint, the Plaintiffs truthfully attributed many of the in-court statements to Defendant Birkhead's legal advisor/counsel, Keischa Lovelace. In its supporting brief to their original Motion to Dismiss, Defendants pointed out that individual capacity liability cannot be established through the actions of a third party (Defendant Birkhead's counsel). In response, Plaintiffs amended its Complaint to now allege that those same statements were made by Defendant Birkhead, even though Defendant Birkhead never appeared personally in court. [Compare Original Complaint ¶¶ 136, 156, 160, 161, 165, 168, 189, 195 and Amended Complaint ¶¶ 172, 218, 223, 224, 228, 231, 252, 258]

B.      Whether Plaintiffs pled viable claims against Defendant Durham County under 42 U.S.C. § 1983 where the Plaintiffs failed to allege any policy or custom of Durham County that was the driving force behind Mr. Bumpass' death?

C.      Whether Plaintiffs pled viable claims against any of the Defendants, in their individual capacities, under 42 U.S.C. § 1983 when the Plaintiffs have not alleged any factual allegations that would defeat qualified immunity?

D.      Whether the Plaintiffs pled any viable state claims against the Defendants, in their individual capacities, when the Plaintiffs have not alleged any factual allegations that would defeat public official immunity?

E.      Whether the Plaintiffs pled any viable state claims against Defendant Birkhead in his official capacity when the Plaintiffs have not alleged any factual allegations that would defeat governmental immunity?

F.      Whether the Plaintiffs pled any viable claims against Defendant Travelers Casualty and Surety Company of America, as Surety?

## IV    LAW AND ARGUMENT

### STANDARD FOR MOTION TO DISMISS

The Court may dismiss a plaintiff's claim under Federal Rules of Civil Procedure, Rules 12(b)(1), (2), and (6) when it is clear the Court has no jurisdiction on either the party or the subject-matter or that the plaintiff cannot prove any set of facts entitling him to relief. The Court must construe the complaint in favor of the plaintiff, accepting as true all material allegations. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843 (1969), *Zeran v. America Online, Inc.,* 129 F.3d 327, 329 (4th Cir. 1997) (citing *Bruce v. Riddle*, 631 F.2d 272, 273 (4th Cir. 1980))

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) assesses the legal sufficiency of

the plaintiff's claims. "[W]hen ruling on a Defendant's Motion to Dismiss, a Judge must accept as true all of the factual allegations contained in the complaint." See *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.E.2d 1081 (2007). Dismissal for failure to state a claim is proper when "it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint." *Randall v. United States*, 95 F.3d 339, 343 (4th Cir. 1996).

However, the plaintiff must allege facts that are sufficient to support each element of the claims. See *Bass v. DuPont*, 324 F.3d 761, 764-65 (4th Cir. 2003) "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012), cert. denied, 133 S.Ct. 1493, 185 L.Ed.2d 548 (2013). See also *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

> **A.** **Plaintiffs failed to plead viable claims against Defendant Birkhead in his official capacity under 42 U.S.C. § 1983 when they failed to allege any policy or custom of the Sheriff's Office that was the driving force behind Mr. Bumpass' death.**

The Plaintiffs allege § 1983 claims of a "cover up" and a "policy of a cover up" against Defendant Sheriff Birkhead, in his official capacity. [Complaint, ¶¶ 277-290; 291-299] "Official[]capacity suits...'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed. 2d 114 (1985)(quoting *Monell v. N.Y. City Dep't of*

7

*Social Servs.*, 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). The Plaintiffs failed to allege any facts to support these §1983 claims.

Though the Plaintiffs refer to the actions of the Defendants as a "cover-up", it appears that the Plaintiffs are alleging a civil conspiracy and a policy of a conspiracy. To properly state a §1983 conspiracy claim, the Plaintiffs must plausibly allege "that the [Defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the decedent's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Conclusory allegations of a conspiracy do not satisfy the "meeting of the minds" element and therefore fail to state a claim. See, e.g., *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995); *Gooden v. Howard Cnty.*, 954 F.2d 960, 970 (4th Cir. 1992)(en banc).

There is no respondeat superior liability under §1983. To sustain a §1983 claim, "it must be shown that the actions of the officers were unconstitutional and were taken pursuant to a custom or policy of the entity." *Giancola v. State of W. Va. Dep't of Pub. Safety*, 830 F.2d 547, 550 (4th Cir. 1987); See also *Monell v. Dep't of Social Services*, 436 U.S. 658, 690, 56 L. Ed. 2d 611, 635 (1978).

The Complaint does not identify any specific policy or custom that was the driving force behind the decedent's death. Nor does it allege that there is an express policy or custom by the Sheriff's Office that lead to the decedent's death. The Plaintiffs must allege policies or customs of the Sheriff's Office that repeatedly caused constitutional violations that are so "persistent and widespread" and "so permanent and well settled as to constitute

8

a 'custom or usage' with the force of law." *Carter v. Morris,* 164 F. 3d 215, 218 (1999).

A single occurrence does not establish the existence of a policy. See *Revene v. Charles Cnty. Com'rs,* 882 F.2d 870, 875 (4th Cir. 1989) (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985)). Simply stating that "Defendant Sheriff Birkhead's policy of covering up the use of excessive force was a direct and proximate cause of Defendant Sharp's and Defendant Osborne's use of excessive force" is just a legal conclusion and is insufficient to properly plead a policy or custom of the Sheriff's Office that caused the death of Mr. Bumpass. "The facts alleged in the complaint must support such a conclusion." *Meyer v. Walls*, 347 N.C. 97, 114, 489 S.E.2d 880, 890 (1997). *Farrell v. Transylvania Cnty. Bd. of Educ*., 175 N.C. Ap. 689, 696, 625 S.E.2d 128, 134 (2006) Essentially, the Office must have had, at the time of the incident, actual or constructive knowledge that the practice had become customary. See *Spell v. McDaniel,* 824 F.2d 1380, 1391 (4th Cir. 1987).

The Complaint is completely silent as to any facts that support the Plaintiffs' wild claims. As a result, the §1983 claims against Sheriff Birkhead in his official capacity should be dismissed. *See Revene v. Charles County Commissioners*, 882 F.2d 870, 875 (4th Cir. 1989) (granting motion to dismiss §1983 claim where there are no "allegations of any developed practice or custom of comparable conduct that might be charged to the deliberate indifference of municipal policy-making authorities."); *See also Zepp v. Rehrmann*, 79 F.3d 381, 385 (4th Cir. 1996) (§ 1983 claim fails where plaintiff fails to identify a county violation which caused him to retire.).

9

**B.** **Plaintiffs failed to plead a viable §1983 claim against Defendant Durham County**

Plaintiffs allege that Durham County has a policy of covering up the use of excessive force and uses the allegations in this case to try to establish such a policy. Again, the Plaintiffs are mistaken in law and in fact.

"Under North Carolina law, sheriffs have substantial independence from county government." *Parker v. Bladen County*, 583 F. Supp. 2d 736, 739, 2008 U.S Dist. LEXIS 49235. The Sheriff and his deputies are not employees of the county. County governments do not hire sheriffs. See *Parker*, 583 F. Supp. 2d at 739. By statute, "the sheriff, not the county encompassing his jurisdiction, has final policymaking authority over hiring, supervising, and discharging personnel in the sheriff's office." *Parker*, 583 F. Supp. 2d at 739; see N.C. Gen. Stat. §153A-103(1); *Clark v. Burke Cnty*., 117 N.C. App. 85, 89, 450 S.E.2d 747, 749 (1994). Therefore, under North Carolina law, any allegations relating to personnel, training, or other law enforcement policies, fall within the sheriff's policymaking authority and are not attributable to the county. See, e.g., *Parker*, 583 F. Supp. 2d. at 739-40; Little, 114 F. Supp. 2d. at 446.

Even if Defendant Birkhead and his deputies were employees of Durham County, that relationship alone would not be enough to establish a § 1983 claim. "[L]ocal governing bodies… can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where… the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that

body's officers." *Monell v. Dep't of Social Services*, 436 U.S. 658, 690, 56 L. Ed. 2d 611, 635 (1978)

Furthermore, the Supreme Court held that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 636.

The Complaint in this matter points to no specific custom, policy, or practice that was promulgated by the County that would support the § 1983 claims. The Plaintiffs simply state that the actions "demonstrate a policy to cover up the use of excessive force by sheriff's deputies in violation of the Fourth Amendment which was in place at the time of the shooting of J'Mauri Bumpass." [Amended Complaint, ¶ 293]

Furthermore, the Plaintiffs state that "[a]t all times relevant to this action, Defendant Sheriff Birkhead was the chief law enforcement officer of Durham County and as such was the chief policymaker for Durham County regarding the use of force by employees of the Durham County Sheriff's Office." [Amended Complaint, ¶ 298] There is no legal basis for this assertion. As previously stated, both state and federal Courts have continuously held that the Sheriff, as an elected official, is solely responsible for the policies of the Sheriff's Office. To support any § 1983 claims against Durham County, the Plaintiffs must allege facts that allege a specific policy or custom *of the County* that was the driving force for the

11

death of Mr. Bumpass. Simply stating that a policy of a cover-up exists is a legal conclusion and is insufficient to defeat a 12(b)(6) motion.

The courts have been very clear that in order to sustain a § 1983 claim against a local governmental entity, "it must be shown that the actions of the officers were unconstitutional and were taken pursuant to a custom or policy of the entity." *Giancola v. State of W. Va. Dep't of Pub. Safety*, 830 F.2d 547, 550 (4th Cir. 1987) The Plaintiff must allege more than one act in order to properly allege such a policy. Again, the courts have held that "[a] single act…cannot suffice, standing alone, to establish the existence of such a policy." *Revene v. Charles Cnty. Com'rs*, 882 F.2d 870, 875 (4th Cir. 1989) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)). It is especially clear that the single act supposedly establishing the policy or custom cannot be the act that is the subject of the lawsuit in question. In the absence of a written policy, Plaintiffs must allege prior similar actions that would show a policy or custom of the governmental entity. The Plaintiffs have failed to allege any facts demonstrating a pattern of violations based on a custom or policy of Defendant Durham County.

The Plaintiffs' failure to identify such policy or custom should result in a complete dismissal of all § 1983 claims against Durham County.

 C. **Plaintiffs failed to plead a viable claim against any of the defendants, in their individual capacities, under 42 U.S.C. § 1983 when the Plaintiffs have not alleged any factual allegations that would defeat qualified immunity.**

   *1. Plaintiffs failed to plead a viable excessive force claim against Defendants Sharp and Osborne under 42 U.S.C. § 1983.*

12

The Plaintiffs allege excessive force § 1983 claims against Defendants Sharp and Osborne. These claims stem from the Plaintiffs' speculation that the Defendants "willfully and maliciously used excessive force when one intentionally put a gun to Mr. Bumpass' head and then either intentionally or recklessly pulled the trigger while the other provided cover." [Complaint, ¶ 270] However, the Complaint is entirely devoid of any factual allegations to support this reckless, baseless, and inflammatory accusation. The allegation that one of the defendants (the Plaintiffs do not specify which one) shot the decedent is obviously speculative and an attempt to provide an alternative explanation for the suicidal death of the decedent.

A thorough reading of the Complaint makes it obvious that the Plaintiffs' allegations against the Defendants is speculative and, in some cases, contradictory. For example, the Complaint alleges that "[n]o one was present at the time of the shooting other than the two deputy sheriffs, Deputy Sharp and trainee Osborne, and the decedent, J'Mauri Bumpass." [Amended Complaint, ¶¶ 2, 119]. Both Defendants Sharp and Osborne, the only witnesses at the scene, stated that the decedent shot himself. [*Id.* at ¶¶ 7, 116, 137] The medical examiner concluded that the gunshot wound was "consistent with suicide" and that the decedent "suffered a fatal contact gunshot wound to the head, a bullet having entered the right side of his skull and exited the left side." [*Id.* at ¶¶ 123, 200] Nevertheless, the Plaintiffs speculate that the Defendants shot the decedent. [*Id.* at ¶¶ 263, 307] Notably, the Plaintiffs concede that this allegation is simply an "inescapable conclusion" that they

13

reached based solely on speculation and their interpretation of subsequent events. [*Id*. at ¶¶ 20, 263, 307].

"[S]ufficient factual allegations must 'raise a right to relief above the speculative level' so as to 'nudge[] the[] claims across the line from conceivable to plausible.'" *Armstrong v. City of Greensboro*, 190 F.Supp. 3d 450, 459 (2016) (quoting *Twombly,* 550 U.S. at 555, 570)(citation omitted)).

The few facts included in the complaint do not support the § 1983 claims. First, the Plaintiffs admit that the decedent was driving a Chevrolet Impala that illegally bore the license plate to a Honda Accord, thereby providing a reason for the initial stop. [Amended Complaint, ¶ 80]. Secondly, the Plaintiffs admit that a Glock firearm was removed from the decedent's car but, notably, fails to deny that the decedent owned a Glock firearm. [*Id.* at ¶ 146] Third, the Plaintiffs admit in the Amended Complaint that the medical examiner's preliminary conclusion is that the "gunshot wound was consistent with suicide." [*Id.* at ¶ 200].

As previously stated, the medical examiner concluded that Mr. Bumpass suffered a "fatal contact gunshot wound to the head, a bullet having entered the right side of his skull and exited the left side." [*Id.* at ¶ 123] The findings of the medical examiner make the Plaintiffs' theory of the cause of death even more illogical. For the bullet to have entered the right side of the driver's skull and exit the left side of the skull, the defendant(s) would have had to reach through the car from the passenger's side in order to inflict the fatal shot or, if standing on the driver's side, the defendant(s) would have had to reach around the

14

decedent's head to put the gun to the right side of his head while also avoiding the bullet as it exited from the left side of his head; Neither scenario is reasonable or likely.

The Plaintiffs allege that Defendants Sharp and Osborne "acted in concert to fatally shoot Mr. Bumpass in the head." [Amended Complaint, ¶ 307] However, this is a legal conclusion with no facts to support this claim; the Amended Complaint does not even include any facts to identify the alleged shooter. Despite the Plaintiffs' outlandish assertion, there are no supporting facts showing that either one of the Defendants shot the decedent. The few facts in the Amended Complaint contradict this assertion. For example, the Amended Complaint states that no gunshot residue was found on either Defendant Sharp or Osborne. It also states that the guns of both Defendants were not missing bullets immediately after the shooting. [*Id.* at ¶ 229] The Plaintiffs only argument is simply that Defendants Sharp and Osborne's explanation about what happened seemed to change. Even if one accepts this argument as true, this can simply be explained by the confusing and quickly evolving situation. As events quickly unfolded, confusion can easily ensue, creating difficulty in trying to recall what happened. Different explanations do not automatically, nor reasonably, create sufficient facts to support an allegation that the deputies intentionally killed the decedent. This is simply the Plaintiffs' wild speculations based on nothing.

In the absence of any supporting facts, the defendants are protected by qualified immunity. Under qualified immunity, public officials who are performing discretionary functions are shielded from liability for damages against them in their individual capacity

15

insofar as their behavior does not violate any "clearly-established statutory or constitutional rights of which a reasonable official would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L.Ed.2d 396, 102 S.Ct. 2727 (1982)  Immunity may be established either on the basis that the right allegedly violated was not at the time one "clearly established," or that, though "clearly established", it was one that a reasonable person in the officer's position could have failed to appreciate would be violated by his conduct.  *See Mitchell v. Forsyth,* 472 U.S. 511, 105 S. Ct. 2806 (1985).

This inquiry is fact-specific and "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 537 U.S. 194, 201-02, 121 S.Ct. 2151, 2156 (2001).  Applying this test requires a factual determination with respect to a defendant's motive, conduct, and circumstances.  The determination as to "whether a reasonable person in the officer's position would have known that his conduct would violate the right at issue must be made on the basis of information actually possessed by the officer at the critical time, or that was then reasonably available to him, and in light of any exigencies of time and circumstance that reasonably may have affected the officer's perceptions.  *Malley v. Briggs,* 475 U.S. 335, 350, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986).

The inquiry must be "particularized" based upon the facts confronting the officer, and it must be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. "For a constitutional right to be clearly established its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless

16

the very action in question has previously been held unlawful…, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666, 678 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 97 L.Ed. 2d 523, 107 S. Ct. 3034 (1987)). Plaintiffs bear the burden of establishing that the right violated was clearly established. Otherwise, qualified immunity remains. *Clark v. Link*, 855 F.2d 156, 160 (4th Cir. 1988).

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct. 596, 599 (2004). The Supreme Court acknowledged that "the tolerance thus accorded by the qualified immunity defense to "good faith" mistakes of judgment traceable to unsettled law, or faulty information, or contextual exigencies, is deliberately designed to give protection to 'all but the plainly incompetent or those who knowingly violate the law." *Pritchett v. Alford, 973 F.2d 307, 313 (1992) (quoting Malley, 475 U.S. at 341).*

The complaint must allege facts, not conclusions or speculation, that would defeat qualified immunity protection. Here, the main action in question (whether Defendants Sharp and Osborne killed the decedent) is based on speculation. The Amended Complaint fails to even allege a logical motive for the Defendants Sharp and Osborne to have committed such an act. The Plaintiffs seem to speculate that the motive was either because the decedent is African-American or, as an alternative, because Defendant Sharp had a prior case with a "distant cousin" of the decedent. [Amended Complaint, ¶ 67] "A court

17

cannot ignore a clear failure in the pleadings to allege any facts which set forth a claim. Consequently, even given the deferential standard allocated to pleadings at the motion to dismiss stage, a court will not accept mere legal conclusions as true, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." *Armstrong v. City of Greensboro*, 190 F. Supp. 3d 450, 459-460 (2016).

The Plaintiffs disagree with the medical examiner's findings and are improperly using this legal action to dispute those findings. Allowing these Plaintiffs to go forward with an action that makes such baseless and inflammatory allegations, without any facts whatsoever to support such speculation, obviates qualified immunity and allows anyone to initiate legal actions against public officials when he/she simply does not agree with the findings of a particular matter.

The Plaintiffs have failed to allege any facts to support its excessive force claim and, therefore, this § 1983 claim of excessive force against Defendants Sharp and Osborne should be dismissed as a matter of law.

2. *The Plaintiffs have failed to allege viable § 1983 individual capacity claims of a "cover up" against any of the Defendants.*

The Plaintiffs have also failed to allege any facts to support a "cover up" that would defeat the qualified immunity protection enjoyed by Defendants Birkhead, Sharp, Osborne, Crider, Meyers, and Butler.

The Plaintiffs list various allegations without clearly identifying which allegation applies to each defendant. There is no way to determine exactly what each individual

18

defendant is alleged to have done.  [Complaint, ¶¶ 282-283]  It appears that the Plaintiffs are attempting to allege some type of conspiracy between the Defendants.

As previously stated, to properly state a conspiracy claim, the Plaintiffs must plausibly allege "that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the decedent's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Conclusory allegations of a conspiracy do not satisfy the "meeting of the minds" element and therefore fail to state a claim. See, e.g., *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995); *Gooden v. Howard Cnty.*, 954 F.2d 960, 970 (4th Cir. 1992)(en banc).

As previously explained, Plaintiffs' allegations are legal conclusions and speculation. For example, the Plaintiffs allege that either Sharp or Osborne "tamper[ed] with the wiring to their in-car camera system to prevent the uploading of the recording of their shooting of Mr. Bumpass." [Amended Complaint, ¶ 282(g)].  However, the Plaintiffs also admit that "[t]he questions regarding who put the electrical tape on the wiring and the condition of the wiring under the electrical tape remain unanswered." [Amended Complaint, ¶ 163]   Therefore, despite not knowing who put the electrical tape on the wiring, nor the condition of the wiring under the tape, the Plaintiffs still make the fantastical leap that Defendants Sharp and/or Osborne (the Plaintiffs are unable to identify which defendant) tampered with the wiring.  The Amended Complaint is riddled with this type of speculation and completely devoid of facts.

19

Another example of contradictions and speculation in the Amended Complaint is where the Plaintiffs allege that misrepresentations made in court and to the Plaintiffs are part of some sort of cover-up by Defendant Birkhead. However, the Plaintiffs also admit in the Amended Complaint that they never met with the sheriff [See Amended Complaint, ¶ 259]. So, these contradictory statements appear to show that it is very unlikely that Defendant Birkhead personally made any representations to the Plaintiffs that would rise to individual capacity liability. The Plaintiffs then allege to this Court that Defendant Birkhead made several incorrect statements in court. However, the Plaintiff also acknowledges that Defendant Birkhead is represented by legal Counsel Keischa Lovelace [See Amended Complaint, ¶ 62]. Additionally, the Plaintiffs initially alleged in the original Complaint that many of those same statements were actually made by Ms. Lovelace. Only after the Defendants argued that Defendant Birkhead cannot have individual capacity liability for the actions and statements of a third party, that the Plaintiffs amended its Complaint to now allege to this Court that Defendant Birkhead made those same statements.

Furthermore, the Plaintiffs attempt to create a conspiracy from routine actions taken by the Defendants. For example, the Plaintiffs allege that Defendant Birkhead refused to produce car dash recordings such that the Plaintiffs were "forced to file a petition for production of law enforcement recordings in Superior Court." [Id, ¶ 220] The Plaintiffs attempt to use their filing of a petition as a fact to support its conspiracy claim. However, a court order is required for the release of such recordings, with very few exceptions. [See

N.C.G.S. § 132-1.4A]  So the Plaintiffs, in its Amended Complaint, have done nothing more but allege that the Sheriff's Office followed legal requirements.  Furthermore, the Plaintiffs claim that Defendant Birkhead violated a Superior Court Order.  However, if this is true, the Plaintiffs could have simply filed for a show cause order and allowed the Superior Court Judge to decide whether the court order was violated.

The Plaintiffs are essentially arguing that the Sheriff's Office should have investigated this matter the way that they wanted and the failure to do so is evidence that the deputies committed murder and the defendants engaged in a conspiracy to cover it up. Again, such speculation is insufficient and improper to support § 1983 conspiracy claims.

There are no facts alleged as to any discussion between the Defendants that shows that the Defendants believed that a "cover up" was even necessary. The Amended Complaint is completely silent as to any facts showing actions taken by Crider, Meyers, or Butler that would support individual capacity claims for conspiracy against them.  There are no facts alleged in the Amended Complaint showing that the Defendants' actions were malicious, as required for the Plaintiffs to properly plead individual capacity claims.

The Amended Complaint does not include any facts showing that the Defendants engaged in conduct that violates "clearly established constitutional rights of which a reasonable person would have known," which is required to defeat the Defendants' qualified immunity protection. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982).

The Plaintiffs' conspiracy allegation is simply an attempt to create liability to the Defendants through conjecture, speculation, and legal conclusions. The courts have consistently held that this is insufficient to properly plead a § 1983 claim. As such, the Defendants remain protected by qualified immunity and the Plaintiffs' § 1983 claims should be dismissed as a matter of law.

### D. PLAINTIFFS FAILED TO PLEAD ANY VIABLE STATE CLAIMS AGAINST DEFENDANTS, IN THEIR INDIVIDUAL CAPACITIES.

#### 1. *Wrongful death individual capacity claims against Defendants Sharp and Osborne*

Plaintiffs allege a state claim of wrongful death against Defendants Sharp and Osborne. This claim hinges on the Plaintiffs' speculation that either Sharp or Osborne (the Plaintiffs cannot identify which one) killed the decedent. However, as previously stated, the Plaintiffs' claims amount to only speculative allegations.

Under North Carolina's wrongful death statute, a decedent's personal representative may seek damages when his death was caused "by a wrongful act, neglect, or default of another …such as would, if the [decedent] had lived, have entitled [him] to an action for damages." N.C. Gen. Stat. §28A-18-2 (2013); *Raftery v. Wm. C. Vick Constr. Co.*, 291 N.C. 180, 230 S.E. 2d 405, 407 (N.C. 1976). Therefore, in order to recover from a wrongful death claim, the Plaintiffs must allege facts showing how the defendants actions caused the death of the decedent. However here, in the absence of such facts, Plaintiffs have chosen to simply create allegations based upon nothing but speculation. The courts have consistently held that these type of allegations are insufficient.

22

In North Carolina, Public Official Immunity bars individual capacity claims against public officials for actions taken within the scope of their duties unless those actions were malicious or corrupt. *Epps v. Duke Univ.*, 122 N.C. App. 198 (1996). To hold an "officer personally liable in his individual capacity, a plaintiff must make a prima facie showing that the officer's conduct is malicious, corrupt, or outside the scope of his official authority." *McCarn v. Beach*, 128 N.C. App. 435, 437, 496 S.E. 2d 402, 404, disc. review denied, 348 N.C. 73, 505 S.E. 2d 874 (1998); *Thomas v. Sellers*, 142 N.C. App. 310, 313, 542 S.E. 2d 283, 285 (2001).

The Courts have routinely held that simply using the words "malice," "corrupt," or "willful" is insufficient. "[A] conclusory allegation that a public official acted willfully and wantonly should not be sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss. The facts alleged in the complaint must support such a conclusion." *Meyer v. Walls*, 347 N.C. 97, 114, 489 S.E.2d 880, 890 (1997). *Farrell v. Transylvania Cnty. Bd. of Educ.*, 175 N.C. Ap. 689, 696, 625 S.E.2d 128, 134 (2006).

As with the Plaintiffs' federal claims, the Plaintiffs' state claims completely consist of legal conclusions and speculation. Though the Plaintiffs used buzz words such as "maliciously" or "willfully," the Amended Complaint fails to allege any facts showing that Defendants Sharp and Osborne caused the death of Mr. Bumpass. [See Amended Complaint, ¶ 307] The few facts in the Amended Complaint show that the Defendants did not cause Mr. Bumpass' death (medical examiner's findings, gun found in Mr. Bumpass'

car, the accounts of Defendants Sharp and Osbourne, which were the only eyewitnesses, etc.).

Public official immunity can only be pierced if facts are alleged in the complaint, and later proven, showing that an officer's conduct was corrupt, malicious, or outside of and beyond the scope of the officer's duties. The Plaintiffs have no facts to pierce the public official immunity protection and admits that the allegation of accusing Defendants Sharp and Osborne of fatally shooting Mr. Bumpass is simply an "inescapable conclusion" that they reached, with nothing to support such a conclusion. [See Amended Complaint, ¶¶ 263, 307]

The Plaintiffs' failure to allege any facts in the complaint to support their conclusions and speculations means public official immunity remains and should result in complete dismissal of the wrongful death claim as a matter of law.

> 2. *Common law obstruction of justice against Defendants Birkhead, Sharp, Osborne, Crider, Meyers, and Butler*

Accordingly, Plaintiffs' obstruction of justice claim only consists of legal conclusions, speculation, and contradictions, all of which are difficult to determine to which Defendant(s) they apply. Obstruction of justice is a common law offense under North Carolina State law. *In re Kivett*, 309 N.C. 635, 670, 309 S.E.2d 442, 462 (1983); *Broughton v. McClatchy Newspapers Inc.*, 161 N.C. App. 20, 33, 588 S.E.2d 20, 30 (2003); *Burgess v. Busby*, 142 N.C. App. 393, 407-08, 544 S.E.2d 4, 12, *rehg. denied* 355 N.C. 224, 559 S.E.2d 554 (2001).

Obstruction of justice "is an offense to do any act which prevents, obstructs, impedes or hinders public or legal justice." *Burgess*, 142 N.C. App. at 408-09, 544 S.E.2d at 12-13. To successfully plead and prevail upon such a claim, a plaintiff must show that his/her civil case *"was in some way judicially prevented, obstructed, impeded or hindered by the acts of the defendants." Broughton*, *supra*, 161 N.C. App. at 33, 588 S.E.2d at 30. In the *Broughton* case, the North Carolina Court of Appeals held that the plaintiff's claim for obstruction of justice was properly dismissed because plaintiff only alleged that she had "suffered obstruction of a just resolution of pending [civil] court actions, case number 88 CVS 6157 (Wake County)." 161 N.C. App. at 33, 588 S.E.2d at 30. The plaintiff in *Broughton* failed to specifically show how defendants' actions had negatively affected or *"adversely impacted"* her lawsuit. As such, the Court ruled that her claim had been properly dismissed. *Id.*

The Plaintiffs in this action, just as in *Broughton*, have only made a list of conclusory/speculative allegations. These statements included: false reports were made, "gunshot residue" evidence was destroyed, and "promoting Defendant Sharp to Corporal and then to Sergeant", without alleging which specific defendant engaged in the behavior. [Amended Complaint, ¶¶ 314(a)-(h), 315(a)-(t)]. Even if considered true for purposes of this motion, the Amended Complaint is silent as to how any of these purported actions have "judicially" prevented or impeded the Plaintiffs from bringing this civil lawsuit. The Plaintiffs also failed to allege any facts in the Amended Complaint that would support individual capacity claims and, thus, defeat public official immunity. In the absence of such

25

facts, the conclusory statements of the Plaintiffs' obstruction of justice claim cannot survive dismissal.

### 3. *Reckless Infliction of Emotional Distress against defendants Birkhead, Sharp, Osborne, Crider, Meyers, and Butler*

The Plaintiffs' reckless infliction of emotional distress claim has the same fatal flaws. North Carolina recognizes intentional and negligent infliction of emotional distress. Reckless infliction of emotional distress has been recognized in other states and requires "that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." *Prince v. Sears Holdings Corp.*, 848 F.3d 173 (quoting *Travis v. Alcon Labs., Inc.,* 202 W.Va. 369, 504 S.E.2d 419, 425 (W.Va. 1998)).

Here, the Plaintiffs' claim consists of the same legal conclusions, speculation, and contradictions, while being entirely devoid of facts. The RIED claim is entirely premised on the Plaintiffs' speculation that Defendants Sharp and Osborne killed the decedent, the Defendants covered up the shooting, and falsely claimed suicide, claiming such behavior as "extreme and outrageous conduct." [Amended Complaint, ¶¶ 319, 320]. Again, facts alleged in the Complaint must support such a conclusion. *Meyer v. Walls*, 347 N.C. 97, 114, 489 S.E.2d 880, 890 (1997). *Farrell v. Transylvania Cnty. Bd. of Educ.*, 175 N.C. Ap. 689, 696, 625 S.E.2d 128, 134 (2006). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

The allegations against the Defendants speak only to actions taken in their official capacities (with the exception of the speculation that Mr. Bumpass was fatally shot by defendants Sharp and Osborne). The Amended Complaint simply makes allegations showing that the Plaintiffs are unsatisfied with the investigation. This is insufficient to rise to the level of individual capacity liability. There are no facts alleged showing the Defendants' behavior as "atrocious, intolerable, extreme or outrageous," which is required for reckless infliction of emotional distress. Conclusory allegations are insufficient to withstand a Rule 12(b)(6) motion to dismiss. See *Farrell v. Transylvania Cnty. Bd. of Ed.*, 175 N.C. App. 689, 696, 625 S.E.2d 128, 134 (2006) ("The facts alleged in the complaint must *support* the conclusion.")

"If the plaintiff fails to advance any allegations in his or her complaint other than those relating to a defendant's official duties, the complaint does not state a claim against a defendant in his or her individual capacity…" (*Buchanan v. Hight*, 133 N.C.App. 299, 304-305, 515 S.E.2d 225, 229 (citing *Trantham v. Lane*, 127 N.C. App. 304, 307, 488 S.E.2d 625, 628 (1997))

The Plaintiffs' failure to allege facts to establish individual capacity liability means that public official immunity remains intact for each Defendant and the Plaintiffs' state claims should fail as a matter of law.

### E. PLAINTIFFS' FAILED TO PLEAD ANY VIABLE STATE LAWS AGAINST DEFENDANT BIRKHEAD IN HIS OFFICIAL CAPACITY

The Plaintiffs have also alleged state claims of obstruction of justice and reckless

27

infliction of emotional distress against Defendant Birkhead in his official capacity. As previously explained, the Plaintiffs failed to include facts to properly plead any of the state claims. Furthermore, Defendant Birkhead is protected against the state claims in his official capacity by the doctrine of governmental immunity.

Official capacity claims are essentially claims against the governmental entity. Sovereign, or governmental immunity, bars actions against governmental entities and their employees for claims arising out of the performance of a governmental function, absent consent or waiver. *Mellon v. Prosser*, 126 N.C. App. 620, 486 S.E.2d 439 (1997); 347 N.C. 568, 494 S.E.2d 763 (1998).

Sheriffs and deputy sheriffs are considered public officials for purposes of sovereign/governmental immunity. See *Smith v. State*, 289 N.C. 303, 309-310, 222 S.E.2d 412, 417 (1976). "Sovereign Immunity grants the State, its counties and its public officials in their official capacity an unqualified immunity against lawsuits." See *Phillips v. Gray*, 163 N.C. App. 52, 55, 56 592 S.E. 2d 229, 232 (2004); *Paquette v. County of Durham*, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002) review denied 357 N.C. 165, 580 S.E.2d 695 (2003) motion granted 357 N.C. 165, 580 S.E. 2d 695. Governmental immunity bars an official capacity claim to the same extent it would bar the claim if the governmental body were named as the defendant. See *Mullis v. Sechrest*, 347 N.C. 548 (1998).

A governmental entity may waive immunity by the purchase of liability insurance, thereby subjecting itself to liability for the tortious acts of its officers and employees. N.C. Gen. Stat. § 153A-435 (2003). Specifically, § 58-76-5 of the General Statutes provides

that a sheriff may remove the cloak of governmental immunity by the purchase of a bond. N.C. Gen. Stat. § 58-76-5 (2010). However, the liability is limited to the extent of the bond only. See *Hill v. Medford,* 158 N.C. App. 618, 623, 582, S.E. 2d 325, 328-29 (2003) (Martin, J., dissenting) rev'd per curiam by 357 N.C. 650, 588 S.E. 2d 467 (adopting J. Martin's dissent). Additionally, a plaintiff seeking to overcome a governmental immunity defense must specifically allege in the complaint that the official or governmental entity has waived the right to rely on such an immunity-related defense. See *Phillips v. Gray*, 163 N.C. App. 52, 56, 592 S.E.2d 229, 232 (citing *Clark v. Burke County*, 117 N.C. App. 85, 88, 450 S.E.2d 747, 748 (1994)), disc. review denied, 358 N.C. 545, 599 S.E.2d 406 (2004). If, *assuming arguendo*, the Plaintiffs are allowed to proceed on any state claims, despite the absence of supporting facts, official capacity liability is limited to the extent of the bond only.

### F. PLAINTIFFS HAVE FAILED TO PLEAD VIABLE CLAIMS AGAINST TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA

As Plaintiffs have failed to properly allege facts necessary to establish any viable constitutional or state claims, Defendants' qualified, governmental, and public official immunities remain intact. Therefore, all claims against Travelers, as Surety, should be dismissed as well, as a matter of law.

## VI  CONCLUSION

The Plaintiffs have not pled facts supporting its allegations that the Defendants personally caused the death of the decedent or in any way engaged in behavior that violated

29

the decedent's constitutional rights.  The Plaintiffs have failed to state a claim upon which relief may be granted.  The Defendants' immunity defenses remain and all of the Plaintiffs' claims against the Defendants should be **DISMISSED WITH PREJUDICE**.

Respectfully submitted, this the 9th day of July 2021.

/s/ Larissa S. Williamson
LARISSA S. WILLIAMSON
N.C. State Bar No. 31504
Senior Assistant County Attorney
Durham County Attorney's Office
P.O. Box 3508
200 East Main Street, Fourth Floor
Durham, North Carolina 27702
Telephone No.:        919.560.0710
Facsimile No.:         919-560-0719
Email: lwilliamson@dconc.gov
*Attorney for the Defendants*

# <u>CERTIFICATION</u>

Pursuant to Text Order Granting Motion to Exceed Page Limit issued by Mag/Judge Joe L. Webster (entered 2 July 2021), the undersigned verifies that the foregoing Brief does not exceed 9,375 words – including the body of the Brief, its headings and footnotes, but excluding the caption, signature lines, certificate of service and this verification.

This the 9th day of July 2021.

/s/ Larissa S. Williamson
LARISSA S. WILLIAMSON
N.C. State Bar No. 31504
Senior Assistant County Attorney
Durham County Attorney's Office
*Attorney for the Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of July 2021, I electronically filed the foregoing Defendants' Brief in Support of Motion to Dismiss Amended Complaint with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following and I hereby certify that I have mailed the documents to the following non-CM/ECF participants:

*Plaintiffs:*       Liedeke A. Sharp
Allyn Sharp Law, PLLC
P.O. Box 730
Carrboro, NC 27510
allynsharplaw@gmail.com


/s/ Larissa S. Williamson
Larissa S. Williamson
Senior Assistant County Attorney
Durham County Attorney's Office
N.C. State Bar No. 31504