## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

HERMENA MILES BUMPASS, as            )
Administratrix of the Estate of J'Mauri )
Jysha Bumpass and in her individual   )
capacity, et al.,                      )
                                       )
            Plaintiffs,                )
                                       )
      v.                               )          1:21CV394
                                       )
CLARENCE F. BIRKHEAD, in his          )
Individual and official capacity as Sheriff of )
Durham County, et al.,                 )
                                       )
            Defendants.                )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

J'Mauri Jysha Bumpass ("Bumpass") died from a fatal gunshot wound to his head after

he was pulled over by a Durham County Sheriff's deputy and trainee. Bumpass' parents

("Plaintiffs") bring this action against Durham County Sheriff Clarence F. Birkhead

("Defendant Birkhead"), Durham County, five Durham County Sheriff's deputies—Anthony

L. Sharp, Jr ("Defendant Sharp"), Robert W. Osborne, III ("Defendant Osborne")[1], Brent

Crider ("Defendant Crider"), Bryce D. Meyers ("Defendant Meyers"), Jimmy D. Butler

("Defendant Butler")—and Travelers Casualty and Surety Company of America ("Travelers"),

the surety on the Durham County Sheriff's official bond (collectively "Defendants"). (*See*

*generally* Amended Complaint, Docket Entry 18.) This matter is before the Court upon two

---

[1] Defendant Osborne was a deputy sheriff trainee at the time of Bumpass' death and became
a deputy sheriff on February 10, 2020. (*See* Amended Complaint ¶¶ 46-47, Docket Entry 18.)

motions: (1) Defendants' Motion to Dismiss the Amended Complaint pursuant to Rules 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure for lack of jurisdiction and for failure to state a claim upon which relief can be granted (Docket Entry 30); and (2) Defendants' Motion to Strike several paragraphs from Plaintiffs' Amended Complaint pursuant Rule 12(f) on grounds that they are immaterial, impertinent, and inflammatory and/or scandalous in nature (Docket Entry 32). These matters are ripe for consideration. For the reasons stated below, the undersigned recommends that Defendants' motion to strike be granted in part and denied in part and that Defendants' motion to dismiss be granted in part and denied in part.

## I.     BACKGROUND

The following allegations are set forth in the Amended Complaint. On the morning of December 15, 2019, at or about 12:39 a.m., Bumpass, an African American eighteen-year-old man, was pulled over by Defendants Sharp and Osborne. (Am. Compl. ¶¶ 1, 87.) Only Defendants Sharp and Osborne along with Bumpass were present at the traffic stop. (*Id.* ¶ 2.) At the time of the stop, Defendant Osborne reported the stop as a suspicious vehicle. (*Id.* ¶ 96.) Bumpass was on the phone with a friend during the traffic stop. (*Id.* ¶ 88.) As he was pulled over, Bumpass told his friend that "something didn't feel right." (*Id.*) Through the phone, Bumpass' friend heard Bumpass interact with Defendants Sharp and Osborne. (*Id.* ¶ 89.) "Bumpass' friend heard Defendants Sharp and Osborne speak to [ ] Bumpass, heard a gunshot, heard the car crash, and then heard either Defendant Sharp or Osborne tell the other deputy: 'Oh shit, he was on the phone.'" (*Id.*) Plaintiffs allege that during this time, either Defendant Sharp or Defendant Osborne "intentionally put a gun to [ ] Bumpass' head and then . . . pulled the trigger while the other provided cover." (*Id.* ¶ 270.) "By Defendants

2

Sharp's and Osborne's own statements, there was no justification whatsoever for Defendants Sharp and Osborne to use deadly force against [ ] Bumpass." (*Id.* ¶ 273.)

At the scene, Defendants Sharp and Osborne reported "shots fired" to Durham Communications, called for backup, and Defendant Sharp specifically requested that only Defendant Crider report to the scene as backup. (*Id.* ¶¶ 90, 92.) Defendants Sharp and Osborne claimed they did not approach Bumpass' vehicle until after backup units arrived. (*Id.* ¶ 93). When backup arrived, Bumpass was found in his vehicle "with a backpack covering [his] head [and] concealing his injury." (*Id.* ¶109.) Immediately before emergency medical services ("EMS") arrived, Defendant Meyers told Defendant Sharp that Bumpass "was moving inside the wrecked car." (*Id.* ¶ 105.) According to EMS, when they arrived on the scene a sheriff's deputy told EMS that "there was a possible DOA inside the vehicle with a possible [gunshot wound] to the head . . . [and] a firearm was visible under [Bumpass'] leg . . . ." (*Id.* ¶¶ 103-04.) Plaintiffs allege that based on Defendant Sharp's representations that the vehicle occupant was a possible "DOA" or "armed and dangerous," there was no urgency in removing Bumpass from the car to render medical aid. (*Id.* ¶ 105.)

Despite such, Bumpass was found alive in the vehicle, removed from the vehicle, and transported to the hospital where he later died from his injuries. (*Id.* ¶¶ 106, 120-22.) The medical examiner later found that Bumpass died of a "contact gunshot wound to the head, a bullet having entered the right side of his skull and exited the left side" (*id.* ¶ 123) and reported that Bumpass's death was "consistent with suicide," which Plaintiffs assert was based on Defendants' rendition of the incident (*id.* ¶ 200). Bumpass had no history of depression or other mental health issues, violence, or drug or alcohol dependence, (*id.* ¶ 77) and did not have

3

any warrants for his arrest, contraband on his person or in his car, or drugs or alcohol in his system (*id.* ¶ 77).

During the investigation of the scene, Defendant Osborne removed a gun from Bumpass' vehicle when EMS removed Bumpass from the vehicle. (*Id.* ¶ 106.) Law enforcement officers reported that they were only able to locate one shell casing from the scene, a .380 shell casing found in Bumpass' vehicle. (*Id.* ¶¶ 143-44.) Defendant Birkhead reported that law enforcement later found a 9-millimeter shell casing in a bag of trash swept up by the tow truck driver who arrived at the scene hours after the shooting. (*Id.* ¶ 145.) The State Crime Lab reported that the 9-millimeter shell casing found at the scene had been fired from the gun that Defendants claimed was found in Bumpass' vehicle. (*Id.* ¶ 146.) Defendants Sharp and Osborne maintained that they did not fire shots at the scene. (*Id.* ¶¶ 116-17.)

Plaintiffs allege that Defendants Sharp and Osborne provided inconsistent statements regarding the reason for the traffic stop (*id.* ¶¶ 96-97, 99-100, 125) and the events occurring during the stop (*id.* ¶¶ 109, 113, 115, 117, 126-27). When investigator Ryan Lounsberry responded to the scene of the incident, he told Defendant Butler that the investigation "needed to be handled by the [State Bureau of Investigation]" and "asked Defendant Butler to call the [State Bureau of Investigation] to the scene." (*Id.* ¶ 204.) Defendant Butler responded "no." (*Id.*)

Plaintiffs also allege that Defendants violated Durham County Sheriff's Office policy in their investigation into Bumpass' death. First, Defendants Sharp and Osborne tampered with Defendant Sharp's in-car camera system such that the footage of the traffic stop could not be retrieved. (*Id.* ¶¶ 155-174, 282.) Although policy requires deputies to keep their

4

microphones on when the MVR system is activated, Defendants Crider and Meyers "both manually muted the wireless microphones to their in-car recording system when speaking with Defendant Sharp or with Defendant Osborne about what had just occurred." (*Id.* ¶¶ 186-87.) In addition, Defendant Meyers allowed Defendant Osborne to leave the crime scene and put gloves on before a gunshot residue test could be performed on his hands. (*Id.* ¶ 152.) The gunshot residue tests of Defendant Sharp and Defendant Osborne were inconclusive. (*Id.* ¶ 153.) Moreover, the gunshot residue test conducted on Bumpass' hands was never analyzed. (*Id.* ¶ 154.)

In addition to the alleged inconsistencies at the scene of the investigation, Plaintiffs allege that Defendant Birkhead created a false and misleading record of events through press releases (*id.* ¶ 194-97), his communications with the State Bureau of Investigation (*id.* ¶¶ 208-10), his misrepresentations to Plaintiffs (*id.* ¶¶ 245, 253-261), and false statements made in court (*id.* ¶¶224-232).

Plaintiffs allege that Defendant Sharp has a history with the Bumpass family. Defendant Sharp had previously pointed his gun at one of J'Mauri Bumpass' distant cousins with the surname Bumpass and told him, "The Bumpasses – y'all have a drug ring going on. I'm fixing to bring you motherfuckers down." (*Id.* ¶ 69.) Further, "when Defendants Sharp and Osborne pulled J'Mauri Bumpass over, Defendant Sharp was scheduled to testify at a suppression hearing [the next week] in the criminal case of State v. Timothy Bumpass," another distant cousin of J'Mauri Bumpass. (*Id.* ¶¶ 67, 69.) At the scheduled hearing, "Timothy Bumpass, Sr. was challenging the legality of [a] traffic stop conducted by Defendant Sharp." (*Id.*)

5

Based on the actions of Defendants, Plaintiffs assert eight claims: (1) a claim of excessive force in violation of the Fourth Amendment against Defendants Sharp and Osborne; (2) a claim regarding the cover up of the use of excessive force in violation of the Fourteenth Amendment against Defendants Birkhead, Sharp, Osborne, Crider, Meyers, and Butler; (3) a claim against Defendants Birkhead and Durham County for executing a policy of covering up the use of excessive force by Defendants Sharp and Osborne; (4) a claim against Defendants Birkhead and Durham County for approving, ratifying and Defendant Birkhead's personal participation in a policy of covering up the use of excessive force by sheriff deputies; (5) a wrongful death claim against Defendants Sharp and Osborne; (6) a common law obstruction of justice claim against Defendants Birkhead, Sharp, Osborne, Crider, Meyers, and Butler; (7) a claim for reckless infliction of emotional distress against Defendants Birkhead, Sharp, Osborne, Crider, Meyers, and Butler; and (8) and action on official bond against Defendants Birkhead and Travelers. (*Id.* ¶¶ 264-330.)

Plaintiffs initiated this action on May 18, 2021. (Docket Entry 1.) Defendants moved to dismiss the original complaint and moved to strike selected paragraphs from Plaintiffs' first complaint. (*See* Docket Entries 14, 16.) Plaintiffs filed an Amended Complaint on June 28, 2021. (Docket Entry 18.) Defendants subsequently filed the pending motion to dismiss the Amended Complaint. (Docket Entry 30.) Plaintiffs have filed a response (Docket Entry 36), and Defendants have filed a reply (Docket Entry 39). Defendants also filed the pending motion to strike selected paragraphs from the Amended Complaint. (Docket Entry 32.) Plaintiffs filed a response in opposition to said motion. (Docket Entry 37.)

Case 1:21-cv-00394-CCE-JLW   Document 43   Filed 02/28/22   Page 6 of 36

## II.   MOTION TO STRIKE AMENDED COMPLAINT

Defendants have motioned the Court to strike paragraphs 20, 21, 57, 58, 59, 60, 63, 64, 65, 66, 67, 68, 69, 71, 72, 73, 74, 78, 158, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 263, 270, and 272 from Plaintiffs' Amended Complaint on the grounds that the allegations in those paragraphs are immaterial, impertinent, and inflammatory and scandalous in nature. (Docket Entry 32 at 2.)   Plaintiffs' response brief asserts that the challenged paragraphs are relevant to Plaintiffs' claims.   (*See* Docket Entry 38.)

Rule 12(f) provides that a court may strike from a pleading "any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f).   "The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Buser v. Southern Food Serv.*, 73 F. Supp. 2d 556, 559 (M.D.N.C. 1999) (internal quotation and citation omitted). "Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (internal quotation and citation omitted); *see also Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239, 247 (4th Cir. 2007) (Rule 12(f) motions to strike "are to be granted infrequently").

Defendants contend that the paragraphs they seek to strike are irrelevant, immaterial, and scandalous.   (Docket Entry 33 at 4.)   "[A] motion to strike on the basis of irrelevancy should only be granted when it is clear that the material in question can have no possible bearing upon the subject matter of the litigation and the material may prejudice the other party." *Simaan, Inc. v. BP Prods. N. Am., Inc.*, 395 F. Supp. 2d 271, 278 (M.D.N.C. 2005)

Case 1:21-cv-00394-CCE-JLW   Document 43   Filed 02/28/22   Page 7 of 36

(citations omitted). In addition, a motion to strike on the basis of immateriality should be granted when the material "has no essential or important relationship to the claim for relief." *CTH 1 Caregiver v. Owens*, No. 8:11-2215-TMC, 2012 WL 2572044, at *5 (D.S.C. July 2, 2012) (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 402 F. Supp. 2d 434, 437 (S.D.N.Y. 2005)). Finally, even though "the disfavored character of Rule 12(f) . . . is somewhat relaxed in the context of scandalous matter," a motion to strike based on scandalous matter should only be granted when the allegations "cast a cruelly derogatory light on a party to other persons" and do not "describe acts or events that are relevant to the action." *Devers v. City of Huntington*, No. CV 3:18-1452, 2019 WL 4281936, at *2 (S.D. W. Va. Sept. 10, 2019) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1382 (3d ed. 2004)). The paragraphs Defendants seek to strike fall into seven categories analyzed below.

First, Defendants seek to strike from the Amended Complaint paragraphs 20, 263, 270, and 272, which allege that Defendants Sharp and Osborne fatally shot Bumpass. Defendants claim this allegation is a conclusory accusation unsupported by factual allegations that "could easily put Defendants in harm's way." (Docket Entry 33 at 15.) Similarly, Defendants seek to strike paragraph 21's allegation that Defendants "conceal[ed] evidence and block[ed] any investigation" into Defendants Sharp and Osborne. Even though these allegations cast a derogatory light on Defendants, they are relevant. The allegations that Defendants Sharp and Osborne shot and killed Bumpass and that Defendants engaged in a cover up go to the core of Plaintiffs' claims. For this reason, paragraphs 20, 21, 263, 270 and 272 should not be stricken from the Amended Complaint.

8

Second, Defendants seek to strike paragraphs 71-74 and 78 from the Amended Complaint. Paragraphs 71-74 contain biographical information regarding Bumpass and paragraph 78 contains a photograph of Bumpass alleged to have been taken "just hours before [ ] Bumpass was pulled over and fatally shot." (Am. Compl. ¶ 78.) Defendants claim this information is irrelevant. (Docket Entry 33 at 15.) However, because Defendants allegedly asserted that Bumpass' death was a suicide, Bumpass' familial relationships and mental health could have a possible bearing on the subject matter at issue here. Thus, paragraphs 71-74 and 78 should not be stricken.

Third, Defendants seek to strike paragraphs 57-60, which contain allegations regarding Defendant Birkhead's employment history, including an allegation that he "left his former positions of law enforcement leadership following allegations of falsifying official reports and allegations of sexual harassment." (*See id.* ¶ 58.) Here, where Plaintiffs allege that Defendant Birkhead participated in a cover up, allegations about Defendant Birkhead's employment history and falsifying reports could have some bearing on this litigation and should not be stricken at this time. In contrast, the allegation of sexual harassment in paragraph 58 is irrelevant, scandalous, and should be stricken.

Fourth, Defendants seek to strike paragraphs 175-181, which contain allegations that past co-workers of Defendant Osborne believed him to be racist, arguing these allegations are irrelevant and scandalous. Here, any alleged racial animus may have some bearing as to whether Defendant Osborne used excessive force in the stop of Bumpass, an African American man, and what may have motivated him to do so. Thus, these paragraphs should not be stricken.

Case 1:21-cv-00394-CCE-JLW    Document 43    Filed 02/28/22    Page 9 of 36

Fifth, Defendants seek to strike paragraphs 182-185 containing a text conversation between Defendant Osborne and a friend regarding the December 15th incident and attributing part of the conversation to a reference to Emmett Till and Trayvon Martin. (*See id.* ¶¶182-85.) These paragraphs regarding Defendant Osborne's text conversation about the traffic stop at the heart of this controversy could have some bearing on the case and should remain.

Sixth, Defendants seek to strike paragraphs 63-69, which contain allegations that Defendant Sharp had previous interactions with other individuals with the surname Bumpass, distant relatives of J'Mauri Bumpass. As Defendants note in their brief, Plaintiffs use these allegations to provide a motive or explanation as to why Defendant Sharp would allegedly shoot Bumpass. (*See* Docket Entry 33 at 16.) Thus, these allegations may have some bearing on the matter and should not be stricken.

Finally, Defendants seek to strike paragraph 158 from the Amended Complaint. Paragraph 158 alleges and incorporates a photograph of the allegedly faulty wiring from Defendant Sharp's in-car camera system that Defendant Birkhead produced to Plaintiffs. (*See id.* ¶ 158.) In their Amended Complaint, Plaintiffs claim that Defendants engaged in a cover up to hide the events taking place on December 15th. (*See id.* ¶ 282.) Plaintiffs support this claim with the factual allegation that video footage could not be recovered from Defendant Sharp's in-car camera. (*See id.*) Thus, paragraph 158 is directly relevant to Plaintiffs' claim and should not be stricken.

For these reasons, it is recommended that Defendants' motion to strike be granted in part as to the allegation of sexual harassment in paragraph 58 and denied in part as to the other challenged paragraphs.

## III. MOTION TO DISMISS

Defendants move to dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(b)(1), Rule 12(b)(2), and Rule 12(b)(6). (*See generally* Docket Entry 30.)

A motion under Rule 12(b)(1) raises the question "whether [plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The plaintiff bears the burden of establishing subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015) (citing *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)). When evaluating a Rule 12(b)(1) motion to dismiss, the court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (citing *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

A motion under Rule 12(b)(2) is a motion to determine whether the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(6). In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden [of] making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Eng's Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (1999). A complaint that does not "contain sufficient

11

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' " must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (citations and quotations omitted). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal,* 556 U.S. at 678 and *Twombly*, 550 U.S. at 557).

### a. Defendants' Motion to Dismiss Count 1, Plaintiffs' excessive force claims against Defendants Sharp and Osborne, should be denied.

First, the undersigned turns to Plaintiffs' claims of excessive force against Defendants Sharp and Osborne and Defendants' asserted defense of qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall*

*Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]").  Qualified immunity addresses "the need to hold public officials accountable when they exercise [their] power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009).

"[A] defendant who raises qualified immunity in a 12(b)(6) motion 'faces a formidable hurdle' – because dismissal at this early stage 'is appropriate only if a plaintiff fails to state a claim that is *plausible* on its face,' the defense 'is usually not successful.' " *Smith v. City of Greensboro,* No. 1:19CV386, 2020 WL 1452114, at *5 (M.D.N.C. Mar. 25, 2020), *reconsideration denied*, No. 1:19CV386, 2021 WL 5771544 (M.D.N.C. Dec. 6, 2021) (quoting *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 396 (4th Cir. 2014).  Further, "when qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claims may be hard to identify." *Pearson*, 555 U.S. at 238 (internal citation omitted).  Where a party asserting qualified immunity "assumes certain facts that are not alleged in the complaint and makes inferences that are neither favorable nor reasonable to the allegations in the complaint," such factual disputes are best resolved at summary judgment. *Freedom From Religion Found., Inc. v. Mercer Cnty. Bd. Of Educ.*, No. CV 1:17-00642, 2021 WL 1169378, at *4 (S.D. W. Va. Mar. 26, 2021) (citing *Atheists of Florida v. City of Lakeland, Fla.*, 779 F. Supp. 2d 1330, 1343 (M.D. Fl. 2011)) (deciding qualified immunity defense was "not clear on the face of the complaint").

In determining whether a government official is shielded by qualified immunity, the Court applies the *Saucier v. Katz* two-step analysis. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

13

The first step is whether "the pleaded facts demonstrate that the Defendant's conduct violated a constitutional right," and second step considers whether the right was clearly established. *Blankenship v. Manchin*, 471 F.3d 523, 528 (4th Cir. 2006). Indeed, qualified immunity "protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (citing *Saucier*, 533 U.S. at 206 (2001)).

Here, Defendants maintain that Plaintiffs fail to plead a viable excessive force claim against Defendants Sharp and Osborne and said Defendants are otherwise shielded by qualified immunity. (Docket Entry 31 at 12-18.) Plaintiffs contend that they had sufficiently alleged that Defendants Osborne and Sharp, acting in concert, used excessive force against Bumpass when they shot and killed him at a traffic stop. (Docket Entry 36 at 20-21.)

### i. Plaintiffs have sufficiently alleged that Defendants Sharp and Osborne used excessive force.

In applying the *Saucier* test, the Court first examines whether Plaintiffs have sufficiently alleged that Defendants Sharp and Osborne violated Bumpass' constitutional rights through use of excessive force. The Fourth Amendment secures the right "to be free from unreasonable searches and seizures, which encompasses the right to be free of arrests, investigatory stops, or other seizures effectuated by excessive force." *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006) (internal quotation and citation omitted). Courts employ an "objective reasonableness" standard to determine whether an officer has used excessive force violative of the Fourth Amendment. *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004). Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," courts must pay "careful attention to the facts and circumstances of

14

each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation and citation omitted).

Further, "[o]fficers may reasonably use deadly force . . . when they have 'probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" *Ingle v. Yelton*, 264 F. App'x 336, 340 (4th Cir. 2008) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). When an officer encounters someone who is armed, the officer "does not possess the unfettered authority to shoot a member of the public simply because that person is carrying a weapon. Instead, deadly force may only be used by a police officer when, based on a reasonable assessment, the officer or another person is *threatened* with the weapon." *Cooper v. Sheehan*, 735 F.3d 153, 159 (4th Cir. 2013) (emphasis in original) (citing *Garner*, 471 U.S. at 11-12).

Here, Plaintiffs clearly allege that Defendants Sharp and Osborne used excessive force when they applied deadly force to Bumpass during the December 15th traffic stop. The presumed crime at issue was a minor violation, with Defendants Sharp and Osborne reporting Bumpass' Impala as a suspicious vehicle at the time of the stop. (*See* Am. Compl. ¶ 96.) While Plaintiffs also allege that Defendants Sharp and Osborne later stated that they stopped Bumpass because his driver's license was inactive and the license plate on Bumpass' vehicle was associated with a different vehicle, Plaintiffs allege that Defendants Sharp and Osborne were unaware of the license plate at the time of the traffic stop. (*Id.* ¶¶ 97-101, 108, 125.) Further, Plaintiff alleges that, according to Defendant Sharp, Bumpass complied with the

15

traffic stop before shots were fired, did not pose an immediate threat to the safety of Defendants Sharp and Osborne during the traffic stop, and did not resist arrest or try to flee. (*Id.* ¶¶ 127-128.)

While Plaintiffs note that Defendant Sharp's report stated that Bumpass was found with a firearm under his leg, (*id.* ¶ 104) Plaintiffs expressly state that they do not concede as fact any statements in Defendants' reports referenced in the Amended Complaint. (Docket Entry 36 at 17 n.1.) Even if Bumpass was in possession of a firearm at the time of the stop, officers are only permitted to use deadly force when "the officer or another person is threatened with the weapon." *See Cooper*, 735 F.3d at 159. Plaintiff has not alleged any facts justifying Defendants Sharp and Osborne's use of deadly force against Bumpass. Thus, Plaintiffs have sufficiently pleaded a claim of excessive force where Plaintiffs claim Defendants Sharp and Osborne shot and killed Bumpass during a traffic stop for a suspicious vehicle where Defendants themselves reported that Bumpass did not pose an immediate threat to anyone and did not resist arrest or attempt to flee.

In their brief, Defendants contend that Plaintiffs' excessive force claim is "speculative" and "entirely devoid of any factual allegations" to support the claim.[2] (Docket Entry 31 at 13.) "Determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193 (internal citation and quotation omitted). "[M]ere recitals of the elements of a cause of

---

[2] To the extent that Defendants seek to argue that Plaintiffs' claim of excessive force should be dismissed because the claim that Defendants Sharp and Osborne fatally shot Bumpass is false, this is a factual dispute and will not be considered at this juncture.

action supported by conclusory statements do not suffice." *Barrett v. Sec.*, No. 5:10-CV-469-BO, 2013 WL 12113183, at \*1 (E.D.N.C. Feb. 20, 2013), *aff'd sub nom. Barrett v. USA-Soc. Sec.*, 539 F. App'x 289 (4th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678). "[S]ufficient factual allegations must 'raise a right to relief above the speculative level' so as to 'nudge[] the[] claims across the line from conceivable to plausible.'" *Armstrong v. City of Greensboro*, 190 F. Supp. 3d 450, 459 (2016) (quoting *Twombly*, 550 U.S. at 555, 570)). "The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim." *May v. City of Arlington, Texas*, 398 F. Supp. 3d 68, 77 (N.D. Tex. 2019), *supplemented*, No. 3:16-CV-1674-L, 2019 WL 1429662 (N.D. Tex. Mar. 28, 2019) (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004)).

Here, Plaintiffs have pled sufficient factual allegations to support a claim of excessive force against Defendants Sharp and Osborne. Plaintiffs allege the following: Defendants Sharp and Osborne pulled Bumpass over on December 15, 2019, at 12:39 a.m. (Am. Compl. ¶¶ 79, 87.) No one else was present at the traffic stop. (*Id.* ¶ 2.) Bumpass was on the phone with a friend at the time of the traffic stop. (*Id.* ¶ 88.) As he was pulled over, Bumpass told his friend that "something didn't feel right." (*Id.*) Through the phone, Bumpass' friend heard Bumpass' interaction with Defendants Sharp and Osborne. (*Id.* ¶ 89.) "Bumpass' friend heard Defendants Sharp and Osborne speak to [ ] Bumpass, heard a gunshot, heard the car crash, and then heard either Defendant Sharp or Osborne tell the other deputy: 'Oh shit, he was on the phone.'" (*Id.*) Either Defendant Sharp or Defendant Osborne "intentionally put a gun to [ ] Bumpass' head and then . . . pulled the trigger while the other provided cover." (*Id.* ¶ 270.) After Bumpass' death, the medical examiner determined Bumpass "suffered a fatal gunshot

17

wound to the head, a bullet having entered the right side of his skull and exited the left side." (*Id.* ¶ 123.) "By Defendants Sharp's and Osborne's own statements, there was no justification whatsoever for Defendants Sharp and Osborne to use deadly force against [ ] Bumpass." (*Id.* ¶ 273.)

Plaintiffs further allege that, despite claiming that he and Defendant Osborne did not approach Bumpass' vehicle until after backup units arrived (*id.* ¶ 93) and despite the fact that Bumpass was found "with a backpack covering [his] head [and] concealing his injury," (*id.* ¶109), Defendant Sharp knew that Bumpass had sustained a gunshot wound to the head (*id.* ¶ 110) and told other officers first that he believed Bumpass was trying to shoot at him (*id.* ¶111) and then that he believed Bumpass had shot himself in the head (*id.* ¶ 109). Bumpass had no history of depression or other mental health issues, violence, or drug or alcohol dependence. (*Id.* ¶ 77.) At the time of the stop, Bumpass was on the way to his home to pick up his sister (*id.* ¶ 83-84) and did not have any warrants for his arrest, contraband on his person or in his car, or drugs or alcohol in his system (*id.* ¶ 77). While the medical examiner noted that Bumpass' death was "consistent with suicide," (*id.* ¶ 200), "the medical examiner's report does not rule out the possibility that the manner of death is in fact homicide . . . ." (*id.* ¶ 201).

According to Plaintiffs' allegations, law enforcement officers reported that they were only able to locate one shell casing from the scene, a .380 shell casing found in Bumpass' vehicle. (*Id.* ¶¶ 143-44.) Defendant Birkhead reported that law enforcement later found a 9-millimeter shell casing in a bag of trash swept up by the tow truck driver who arrived at the scene hours after the shooting. (*Id.* ¶ 145.) The State Crime Lab reported that the 9-millimeter shell casing found at the scene had been fired from the Glock that Defendants claimed was

18

found in Bumpass' vehicle. (*Id.* ¶ 146.) Defendants Sharp and Osborne maintained that they did not fire shots at the scene. (*Id.* ¶¶ 116-17.) Defendants Sharp and Osborne both left the scene of the stop and put on gloves before gunshot residue tests were conducted on their hands. (*Id.* ¶ 152.) The gunshot residue tests were inconclusive. (*Id.* ¶ 153.) The gunshot residue test conducted on Bumpass' hands was never analyzed. (*Id.* ¶ 154.)

Further, Plaintiffs allege that Defendants Sharp and Osborne provided inconsistent statements regarding the reason for the traffic stop (*id.* ¶¶ 96, 124-25, 99-100) and the events occurring during the stop (*id.* ¶¶ 109, 113, 115, 117, 126-27). Plaintiffs also allege that Defendant Sharp had previously pointed his gun at one of J'Mauri Bumpass' distant cousins with the last name Bumpass and told him, "The Bumpasses – y'all have a drug ring going on. I'm fixing to bring you motherfuckers down." (*Id.* ¶ 69.)

Clearly, the facts alleged nudge Plaintiffs' claim that Defendants Sharp and Osborne fatally shot Bumpass across the line from conceivable to plausible. As such, Plaintiffs have sufficiently stated a claim of excessive force in violation of the Fourth Amendment.

### ii. Plaintiffs' allegations that Defendants Sharp and Osborne violated clearly established law are sufficient to preclude qualified immunity for Defendants at this stage.

Because Plaintiffs' Amended Complaint has adequately alleged that Defendants Sharp and Osborne violated Bumpass' constitutional rights by using excessive force, the Court turns to the second *Saucier* step and determines whether, in light of clearly established law, Defendants Sharp and Osborne could have reasonably believed that their actions were lawful. *See Saucier*, 533 U.S. at 206. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that

19

right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and alteration omitted). In determining whether a right is clearly established, the Court first considers controlling authority in the jurisdiction, i.e. the decisions of the United States Supreme Court, the Fourth Circuit Court of Appeals, and the North Carolina Supreme Court. *See Booker v. South Carolina Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017). Where a qualified immunity defense is "not clear on the face of the complaint," it is best resolved at summary judgment. *Freedom From Religion Found., Inc.*, 2021 WL 1169378, at *4.

Here, Plaintiffs allege that Defendant Sharp reported that Bumpass complied with the traffic stop by pulling over and bringing his vehicle to a stop. (Am. Compl. ¶¶ 127-28.) Plaintiffs allege that Defendants Sharp and Osborne then, without justification, fatally shot Bumpass when one deputy put a gun to his head and pulled the trigger while the other deputy provided cover. (*Id.* ¶ 270.) No reasonable officer would believe that it is lawful to shoot someone complying with a traffic stop and without justification. To the extent that Defendants challenge Plaintiffs' assertions or seek to argue additional facts that are not clear on the face of the Amended Complaint, those disputes are best resolved at a later juncture. *See Freedom From Religion Found., Inc.*, 2021 WL 1169378, at *4. Thus, Defendants' have not shown that they are shielded by qualified immunity at this stage of litigation.

### b. Defendants' Motion to Dismiss Count 2, Plaintiffs' cover up claims against Defendant Birkhead in his individual capacity and Defendants Sharp, Osborne, Crider, Meyers, and Butler, should be granted.

Plaintiffs allege that Defendants Sharp, Osborne, Crider, Meyers, and Butler (collectively "Deputy Defendants") and Defendant Birkhead engaged in a cover up regarding the use of excessive force in a "deliberate abuse of power" that "shocks the conscience in

violation of the Fourteenth Amendment to the United States Constitution." (Am. Comp. ¶ 290.) Defendants move to dismiss this claim, asserting that Plaintiffs' claim consists of legal conclusions and speculation, and that Defendants are entitled to qualified immunity.[3] (Docket Entry 31 at 18-22.)

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV § 1. "The touchstone of due process is protection of the individual against arbitrary action of the government." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (internal quotation and citation omitted). Substantive due process proscribes the government's "exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Id.* at 836. It is not sufficient that "someone cloaked with state authority" causes harm. *White v. City of Greensboro*, 408 F. Supp. 3d 677, 695 (M.D.N.C. 2019) (citing *Lewis*, 523 U.S. at 848). Instead, the action must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* (citing *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999) (internal quotations omitted). For a substantive due process claim to survive a motion to dismiss, the plaintiff must allege "(1) that they had a [protected] interest; (2) that the state deprived them of this [protected] interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 827 (4th Cir. 1995) (emphasis in original).

---

[3] Defendants also contend that Plaintiffs have not set out a claim of a cover up because Plaintiffs have not properly stated a claim of conspiracy to engage in a cover up. (Docket Entry 31 at 18-19.) However, Plaintiffs have not attempted to bring a conspiracy claim but have instead attempted to bring a claim of abuse of power. (*See* Am. Compl. ¶¶ 279-281, 290.) For this reason, the undersigned does not analyze Plaintiffs' claim as an alleged conspiracy.

Case 1:21-cv-00394-CCE-JLW    Document 43    Filed 02/28/22    Page 21 of 36

Plaintiffs appear to assert a liberty interest in the investigation into Bumpass' death, alleging that Defendant Birkhead and the Deputy Defendants violated Plaintiffs' substantive due process rights by covering up and preventing an investigation into the cause of Bumpass' death. (*See* Am. Compl. ¶ 282-290.) There is "no right to criminal investigation or criminal prosecution of another." *Smith v. McCarthy*, 349 F. App'x 851, 859 (4th Cir. 2009); *see also Howard v. City of Durham*, 487 F. Supp. 3d 377, 404-05 (M.D.N.C. 2020), *appeal dismissed sub nom. Howard v. Dowdy*, No. 20-2114, 2021 WL 1529288 (4th Cir. Jan. 27, 2021) (determining fabrication of evidence alone was not sufficient to violate plaintiff's substantive due process rights). Similarly, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973).

Here, Plaintiffs have not sufficiently alleged that Defendant Birkhead and the Deputy Defendants violated Plaintiffs' substantive due process rights. Plaintiffs essentially allege that Defendant Birkhead and Deputy Defendants acted to cover up the fatal shooting of Bumpass and prevented a legitimate investigation into his cause of death. However, Plaintiffs do not have a constitutional right to an investigation into Bumpass' death. *See Smith*, 349 F. App'x 859. Thus, Plaintiffs' due process claims against Defendant Birkhead in his individual capacity and Defendants Sharp, Osborne, Crider, Meyers, and Butler should be dismissed.

### c. Defendants' Motion to Dismiss Counts 3 and 4, Plaintiffs' claims of policy of covering up excessive force brought against Defendant Birkhead and Defendant Durham County, should be granted.

Plaintiffs also bring claims against Defendant Birkhead in his official capacity and Defendant Durham County for implementing a "policy of covering up the use of excessive force," making them liable for the use of excessive force against Bumpass and for "the coverup

22

and prevention of investigation" into Bumpass' death. (Am. Compl. ¶ 297.) Defendants assert that these claims should be dismissed because the Amended Complaint does not sufficiently allege a cover up and because Defendant Durham County is not liable for decisions that fall within Defendant Birkhead's policymaking authority. (Docket Entry 31 at 7-12.)

### i. Plaintiffs' claims against Defendant Birkhead in his Official Capacity fail.

When a plaintiff brings a claim against an officer in their official capacity, the Court treats that claim as a claim against the entity itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). To the extent Plaintiff asserts claims against Defendant Birkhead in his official capacities, the Durham County Sheriff's Office is effectively a party based on his alleged actions. *See Oliver v. Baity*, 208 F. Supp. 3d 681, 688 (N.C.M.D. 2016) (determining claims against the sheriff of Forsyth County in his official capacity are claims against the Forsyth County Sheriff's Office itself).

Plaintiffs bring two claims of liability under § 1983 against Defendant Birkhead in his official capacity. First, Plaintiffs claim in Count III of their Amended Complaint that Defendant Birkhead enacted a "policy of covering up the use of excessive force," which was a "direct and proximate cause of Defendant Sharp's and Defendant Osborne's use of excessive force" against Bumpass. (Am. Compl. ¶ 297.) Second, in Count IV, Plaintiffs claim that Defendant Birkhead "approved and ratified the policy of covering up the use of excessive force—by participating himself . . . by directing others to participate, and by promoting Defendants Sharp, Osborne, and Butler following their participation." (*Id.* ¶ 303.)

In order to establish municipal liability, Plaintiff must show: (1) the injury "was caused by a constitutional violation, and (2) the municipality is responsible for that violation."

23

*Wilkerson v. Thrift,* 124 F. Supp. 2d 322, 339-40 (W.D.N.C. 2000). The "municipality is responsible only when the execution of the government's policy or custom, whether made by its lawmakers or by those whose acts may fairly be said to represent official policy, inflicts injury." *Id.* (citing *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694 (1978)). "[M]unicipal liability under § 1983 may not be predicated solely upon a respondeat superior theory. Liability arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News,* 743 F.2d 227, 229 (4th Cir. 1984) (citing *Monell,* 436 U.S. at 694). Policies and customs for which municipal liability may arise are:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest [a] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle,* 326 F.3d 463, 471 (4th Cir. 2003) (citation omitted). It is not enough for a plaintiff to merely "identify conduct properly attributable to the municipality." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1996). Instead, "the plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the moving force behind the injury alleged." *Id.*

Here, in Count III of the Amended Complaint, Plaintiffs allege that "[t]he actions of Defendant [ ] Birkhead and his deputies, agents and employees to cover up the use of excessive force by Defendant Sharp and Defendant Osborne have been continuous and consistent and are ongoing." (Am. Compl. ¶ 296.) Plaintiffs allege that this policy "was a direct and

24

proximate cause of Defendant Sharp's and Defendant Osborne's use of excessive force against [ ] Bumpass in violation of the Fourth Amendment." (*Id.* ¶ 297.) To the extent that Plaintiffs intended to assert municipal liability through a theory of a widespread custom or practice, this claim fails because Plaintiffs have not provided any factual allegations to support the allegation that the policy of covering up excessive force was widespread or even that it extended beyond this single alleged use of excessive force. *See Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987) (characterizing widespread as "a course of customary practices").

In Count IV of the Amended Complaint, Plaintiffs allege that Defendant Birkhead, the chief policymaker for the Durham County Sheriff's Office, "approved and ratified the policy of covering up the use of excessive force—by participating himself beginning with his first press release, by directing others to participate, and by promoting Defendants Sharp, Osborne and Butler following their participation." (Am. Compl. ¶ 303.) Plaintiffs allege that this makes Defendant Birkhead liable to Plaintiffs for the constitutional violation of "the cover up and the prevention of investigation of the use of excessive force . . . in violation of the Fourteenth Amendment . . . ." (*Id.* ¶ 305.) However, as discussed herein, there is no constitutional right to an investigation. *See Howard*, 487 F. Supp. 3d 404-05. Thus, this claim fails.

For these reasons, Plaintiffs' claims *Monell* claims as to Defendant Birkhead in his official capacity should be dismissed.

### ii. Plaintiffs' claims against Defendant Durham County fail.

Turning to Defendant Durham County, Plaintiffs claim it is liable to Plaintiffs for the use of excessive force against Bumpass and the cover up of the use of excessive force. (Am. Compl. ¶¶ 298-99, 304-05.)

To the extent that Plaintiffs attempt to impute liability to Defendant Durham County for the acts of Defendant Birkhead and Deputy Defendants, Plaintiffs' claims against Defendant Durham County fail. First, as discussed herein, Plaintiffs have not sufficiently alleged *Monell* liability as to Defendant Birkhead in his official capacity. Beyond that, under North Carolina law, the Office of the Sheriff is "separate and distinct from the Board of County Commissioners because a sheriff is elected by the people, not employed by the county." *Cranford v. Frick*, No. 1:05CV00062, 2007 WL 676687, at *3 (M.D.N.C. Feb. 28, 2007) (citing N.C. Gen. Stat. § 162–1 (2000)). Further, it is "[t]he sheriff, not the county, [that] has final policymaking authority over the personnel decisions in his office." *Little v. Smith,* 114 F. Supp. 2d 437, 446 (W.D.N.C. 2000)); *see also Cranford*, 2007 WL 676687 at *3 (dismissing plaintiff's official capacity claim against Stanly County because the Stanly County Sheriff's Office had final policymaking authority over the employees whose actions allegedly harmed plaintiff).

Here, Plaintiffs allege that Durham County is liable to Plaintiffs for the use of excessive force on Bumpass and for Defendant Birkhead and the Deputy Defendants cover up of the that excessive force. However, the Durham County Sheriff's Office, not Durham County, is the policymaking authority for Durham County Sheriff's deputies. Plaintiff has not made any allegations of special circumstances that would impute this liability to Durham County. Moreover, as previously stated, Plaintiffs' claim against Defendant Birkhead in his official capacity fails. Thus, Plaintiffs' claims as to Durham County should be dismissed.

26

### d. Defendants' Motion to Dismiss Count 5, Plaintiffs' wrongful death claims against Defendants Sharp and Osborne, should be denied.

Plaintiffs claim that Defendants Sharp and Osborne intentionally committed assault and battery of Bumpass that caused his death, making Defendants Sharp and Osborne liable to Plaintiffs for damages from the assault and battery that caused Bumpass' death. (Am. Compl. ¶¶ 306-12.) Defendants move to dismiss this claim, asserting that Plaintiffs' claims are based on speculative allegations and asserting that Defendants Sharp and Osborne are protected by public official immunity. (Docket Entry 31 at 22.)

Under North Carolina's wrongful death statute, a plaintiff bringing a wrongful death action must allege "(1) a wrongful act resulting in death, (2) causation, and (3) damages." *Hensley v. Suttles*, 167 F. Supp. 3d 753, 766 (W.D.N.C. 2016), *aff'd sub nom. Hensley on behalf of N. Carolina v. Price*, 876 F.3d 573 (4th Cir. 2017). Plaintiffs "support a wrongful death claim by depicting a course of behavior that would have allowed [the decedent] to 'maintain[ ] an action for negligence or some other misconduct if [he] had survived.'" *Burroughs v. Page*, No. 1:17CV463, 2019 WL 5561043, at *9 (M.D.N.C. Oct. 28, 2019) (quoting *Nelson v. United States*, 541 F. Supp. 816, 818 (M.D.N.C. 1982)).

Here, Plaintiffs allege that Defendants Sharp and Osborne assaulted and battered Bumpass, which "caused Bumpass physical and emotional pain and suffering and ultimately caused his death." (Am. Compl. ¶ 310.) Specifically, Plaintiffs allege that either Defendant Sharp or Osborne "intentionally put a gun to [ ] Bumpass' head," without justification, "while the other provided cover." (*Id.* ¶ 307.) Thus, Plaintiffs have sufficiently pleaded a wrongful death claim based on Defendants Sharp and Osborne's alleged assault and battery of Bumpass.

27

Turning to Defendants' public official immunity argument, public official immunity shields a law enforcement officer from individual liability where the officer "lawfully exercises the judgment and discretion . . . of his office, keeps within the scope of his official authority, and acts without malice or corruption." *Lowder v. Payne*, 226 N.C. App. 201, 739 S.E.2d 627 (2013) (quoting *Thompson v. Town of Dallas*, 142 N.C. App. 651, 653, 543 S.E.2d 901, 904 (2001)). However, "[a]ctions that are malicious, corrupt or outside of the scope of official duties will pierce the cloak of official immunity . . . ." *Hines v. Johnson*, No. 1:19CV515, 2020 WL 1516397, at *17 (M.D.N.C. Mar. 30, 2020) (quoting *Hart v. Brienza*, 246 N.C. App. 426, 431, 784 S.E.2d 211, 215 (2016), *disc. rev. denied*, 369 N.C. 69, 793 S.E.2d 223 (2016)). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984). As noted by Defendants, "a conclusory allegation that a public official acted willfully and wantonly should not be sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss. The facts alleged in the complaint must support such a conclusion." *Meyer v. Walls*, 347 N.C. 97, 114, 489 S.E.2d 880, 890 (1997). (*See* Docket Entry 31 at 23.)

Defendants assert that public official immunity applies because Plaintiffs have made conclusory allegations that Defendants Sharp and Osborne acted with malice but have not alleged facts to support that conclusion. (*Id.* at 23-24.) The undersigned finds that Plaintiffs have sufficiently alleged facts to support the conclusion that Defendants Sharp and Osborne acted in a way that a man of reasonable intelligence would know to be contrary to his duty and in a way that is intended to be injurious to another. Plaintiffs allege that Defendants Sharp

and Osborne pulled Bumpass over based solely on the assertion that they believed his vehicle was suspicious. Plaintiffs further allege that then, despite the fact that Defendants Sharp and Osborne reported Bumpass was compliant in the stop, Defendants Sharp and Osborne held a gun to his head and shot and killed him. The undersigned thus concludes that Plaintiffs' Amended Complaint has alleged sufficient factual allegations to defeat Defendants' claim of public official immunity at this stage. *See Ridge v. City of Randleman*, No. 1:07CV366, 2008 WL 11487925, at *2 (M.D.N.C. June 13, 2008) (determining defendants were not entitled to public official immunity at the motion to dismiss stage where plaintiff supported her wrongful death claim with the allegation that officers shot and killed the decedent during a traffic stop without justification). For these reasons, Plaintiffs' wrongful death claim should survive Defendants' motion to dismiss.

### e. Defendants' Motion to Dismiss Count 6, Plaintiffs' common law obstruction of justice claim against Defendants Birkhead, Sharp, Osborne, Crider, Meyers, and Butler, should be denied.

Plaintiffs also bring a claim that Defendant Birkhead and the Deputy Defendants intentionally acted to obstruct justice by covering up or aiding and abetting the cover up of the fact that Defendants Sharp and Osborne fatally shot Bumpass. (Am. Compl. ¶¶ 313-17.) Defendants assert that this claim should be dismissed because Plaintiffs have not sufficiently alleged facts supporting this claim, Plaintiffs have not alleged how they were impeded from bringing the instant suit, and because public official immunity shields Defendants from this claim. (Docket Entry 31 at 25.)

Under North Carolina state law, " 'acts which obstruct, impede or hinder public or legal justice . . . amount to the common law offense of obstructing justice,' so that a complaint

alleging that the defendants engaged in such activities states a claim for relief." *Blackburn v. Carbone*, 208 N.C. App. 519, 526, 703 S.E.2d 788, 794 (2010) (quoting *Henry v. Deen*, 310 N.C. 75, 87, 310 S.E.2d 326, 334 (1984)). Destruction or alteration of evidence or the creation of a "false and misleading" record of events can support a claim of obstruction of justice. *See Henry*, 310 N.C. at 88, 310 S.E.2d at 334-35 ("Where, as alleged here, a party deliberately destroys, alters or creates a false document to subvert an adverse party's investigation of his right to seek a legal remedy, and injuries are pleaded and proven, a claim for the resulting increased costs of the investigation will lie."); *see also Jones v. City of Durham*, 183 N.C. App. 57, 59, 643 S.E.2d 631, 633 (2007) (denying motion to dismiss plaintiff's obstruction of justice claim where plaintiff alleged that defendant officer misplaced or destroyed in-car camera footage of the incident at issue).

Here, Plaintiffs have sufficiently alleged facts to support a claim of obstruction of justice as to Defendants Sharp, Osborne, and Birkhead. Plaintiffs allege that Defendants Sharp and Osborne intentionally made false and misleading statements regarding Bumpass' death (*see* Am. Compl. ¶¶ 90-93, 109-119, 126-134, 137-143) and that Defendants Sharp and Osborne tampered with Defendant Sharp's in-car camera system such that the footage of the traffic stop could not be retrieved (*id.* ¶¶ 155-174, 282). Plaintiffs also allege that Defendant Osborne left the crime scene and put gloves on before a gunshot residue test could be performed on his hands. (*Id.* ¶ 152.) Regarding Defendant Birkhead, Plaintiffs allege that he created a false and misleading record of events through press releases (*id.* ¶¶ 194-97), his communications with the State Bureau of Investigation (*id.* ¶¶ 208-10), misrepresentations to Plaintiffs (*id.* ¶¶ 237-239, 245, 253-261), and false statements made in court (*id.* ¶¶ 224-232).

30

Plaintiffs have also alleged that Defendants Meyers and Crider acted against Durham County Sheriff's Office policy by muting the microphones on their in-car recording systems when speaking with Defendants Osborne and Sharp at the scene. (*Id.* ¶¶ 186-87, 191-92.) Plaintiffs further allege that Defendant Meyers failed to secure the crime scene from Defendants Sharp and Osborne, allowed Defendant Osborne to guard Bumpass' backpack and remove the gun from Bumpass' car, and allowed Defendant Osborne to put on gloves before a gunshot residue test could be performed. (*Id.* ¶¶ 188-190.) Regarding Defendant Butler, Plaintiffs allege that Investigator Lounsberry told Defendant Butler that the State Bureau of Investigation needed to handle the investigation into Bumpass' death and asked Defendant Butler to call the State Bureau of Investigation. (*Id.* ¶ 204.) Defendant Butler said "no." (*Id.*)

Further, Plaintiffs have alleged that Defendant Birkhead has acted with intent to "run out the two-year statute of limitations" (*id.* ¶ 261), and that Plaintiffs have incurred "additional expenses . . . in [their] efforts to obtain information and in bringing and maintaining this action," because of Defendants' actions. (*Id.* ¶¶ 316-17.) This is sufficient to constitute an injury as a result of the alleged obstruction. *See Henry*, 310 N.C. at 88, 310 S.E.2d at 334-35. Considering the factual allegations, the undersigned concludes Plaintiffs have sufficiently stated a claim of obstruction of justice as to Defendants Birkhead, Sharp, Osborne, Meyers, Crider, and Butler.

Defendants assert that they are protected by public official immunity for any obstruction of justice claims. Here, Plaintiffs claim that Defendant Birkhead and the Deputy Defendants intentionally destroyed evidence and created a "false and misleading" record of events to deprive Plaintiffs of the opportunity to seek justice. This claim is sufficient to

preclude Defendants' public official immunity at this stage of litigation. *See Chastain v. Arndt*, 253 N.C. App. 8, 19, 800 S.E.2d 68, 76 (2017) (determining plaintiff's allegations sufficiently pierced defendant-law enforcement officer's public official immunity where plaintiff alleged defendant acted wantonly, contrary to duty, and with intent to injure). For these reasons, Defendants' motion to dismiss the obstruction of justice claim should be denied.

      **f.  Defendants' Motion to Dismiss Count 7, Plaintiffs' intentional infliction of emotional distress claim against Defendants Birkhead, Sharp, Osborne, Crider, Meyers, and Butler, should be denied.**

While Plaintiffs have alleged reckless infliction of emotional distress, a claim that does not exist under North Carolina state law, Plaintiffs' claim sounds in intentional infliction of emotional distress and the undersigned construes this claim as such. "The essential elements of a claim for intentional infliction of emotional distress are '1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress.'" *Holloway v. Wachovia Bank & Tr. Co.*, 339 N.C. 338, 351, 452 S.E.2d 233, 240 (1994) (quoting *Dickens v. Puryear,* 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)). Extreme and outrageous conduct is that which "shocks the conscience or exceeds all bound of decency tolerated by society" and "must be so outrageous in character, and so extreme in degree, . . . to be regarded as atrocious, and utterly intolerable in a civilized community." *Russ v. Causey*, 732 F. Supp. 2d 589, 607 (E.D.N.C. 2010), *aff'd in part*, 468 F. App'x 267 (4th Cir. 2012) (internal quotation and citation omitted). An act that is performed with "reckless indifference to the likelihood that emotional distress may result" is sufficient to satisfy the intent requirement in intentional infliction of emotional distress. *Dickens*, 302 N.C. at 449, 376 S.E.2d at 333.

Case 1:21-cv-00394-CCE-JLW   Document 43   Filed 02/28/22   Page 32 of 36

Here, Plaintiffs' intentional infliction of emotional distress claim is predicated on the allegations that Defendants intentionally mislabeled Bumpass' death as a suicide and deliberately covered up the circumstances of Bumpass' death. (Am. Compl. ¶¶ 319-22.) Plaintiffs allege that Defendants acted in this manner to prevent Plaintiffs from obtaining relief in court. (*Id.* ¶¶ 18-21.) The acts alleged are sufficient to constitute "extreme and outrageous behavior" that, if proven, may entitle Plaintiffs to relief for intentional infliction of emotional distress. *See e.g. Thomas v. City of Blue Island*, 178 F. Supp. 3d 646, 655-56 (N.D. Ill. 2016) (denying defendant-officers' motion to dismiss plaintiff-mother's claim of intentional infliction of emotional distress where mother alleged officers intentionally covered up the circumstances of her son's death to conceal the identity of the driver who killed her son because of the driver's personal connections).

Defendants also assert that they are entitled to public official immunity as to Plaintiffs' intentional infliction of emotional distress claim. Under North Carolina law, "if a party alleges an intentional tort claim, the doctrine of qualified immunity does not immunize public officials or public employees from suit in their individual capacities." *Hawkins v. State*, 117 N.C. App. 615, 630, 453 S.E.2d 233, 242, *disc. rev. improvidently allowed*, 342 N.C. 188, 463 S.E.2d 79 (1995) (affirming trial court's denial of defendant's motion to dismiss plaintiff's intentional infliction of emotional distress claim on the basis of public official immunity); *see also Hines*, 2020 WL 1516397 at *17 (stating "[i]ndividual [d]efendants are not entitled to public official immunity with respect to [p]laintiffs' state claims for intentional infliction of emotional distress . . ." at the motion to dismiss stage). Thus, Defendants are not entitled to public official immunity at this stage of litigation.

33

### g. Defendants' Motion to Dismiss Count 8, Plaintiffs' action on official bond against Defendants Birkhead and Travelers, should be denied.

Finally, Plaintiffs bring an action on official bond against Defendant Birkhead and Travelers. (Am. Compl. ¶ 324-330.) Defendants assert that this claim should be dismissed because Plaintiffs have failed to plead any viable claims against Defendant Birkhead and the Deputy Defendants, meaning all claims against Travelers should be dismissed. (*See* Docket Entry 31 at 29.) Under North Carolina Law, "[i]t is well settled that pursuant to the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity" and that a "suit against a public official in his official capacity is a suit against the State." *White v. Trew*, 366 N.C. 360, 363 (2013). While sheriffs are typically entitled to governmental immunity, "a sheriff may . . . waive governmental immunity by purchasing a bond." *Sellers v. Rodriguez*, 149 N.C. App. 619, 624, 561 S.E.2d 336, 339 (2002).

Under North Carolina General Statute 58-76-5,

> Every person injured by the neglect, misconduct, or misbehavior in office of any . . . sheriff . . . or other officer, may institute a suit or suits against said officer or any of them and their sureties upon their respective bonds for the due performance of their duties in office in the name of the State . . . . [E]very such officer and the sureties on the officer's official bond shall be liable to the person injured for all acts done by said officer by virtue or under color of that officer's office.

N.C. Gen. Stat. § 58-76-5. To bring a claim of action on an official bond under § 58-76-5, a plaintiff must allege that the bonded officer "either intentionally engaged in misconduct and misbehavior while performing his custodial duties, or that he acted negligently in the performance of those duties, despite his duty to do otherwise." *Stafford v. Barker*, 129 N.C. App. 576, 585, 502 S.E.2d 1, 6 (1998).

34

Here, Plaintiffs allege that Defendant Birkhead furnished a bond pursuant to § 58-76-5. Plaintiffs also allege that Defendant Birkhead, acting in his official capacity, injured Plaintiffs by misconduct and misbehavior when he covered up the alleged fact that Defendants Sharp and Osborne shot and killed Bumpass without justification, which is part of Plaintiffs' obstruction of justice and intentional infliction of emotional distress claims. As discussed herein, Plaintiffs have provided factual allegations to support these claims. Plaintiffs have added Travelers as surety in this action. Thus, Plaintiffs' allegations are sufficient to survive Defendants' motion to dismiss. *See Summey v. Barker*, 142 N.C. App. 688, 691, 544 S.E.2d 262, 265 (2001) (affirming trial court's denial of defendant-sheriff's motion to dismiss action on official bond where plaintiff alleged defendant-sheriff was liable for his personnel's acts and negligence). Thus, Defendants' motion to dismiss Plaintiffs' claim of action on official bond against Defendants Birkhead and Travelers should be denied.

## IV.     CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Strike Plaintiffs' Amended Complaint (Docket Entry 32) be **GRANTED IN PART** to the extent the allegation of sexual harassment in paragraph 58 be stricken from the Amended Complaint, and **DENIED IN PART** to the extent that paragraphs 20, 21, 57, 59, 60, 63, 64, 65, 66, 67, 68, 69, 71, 72, 73, 74, 78, 158, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 263, 270, 272 and the remaining portion of paragraph 58 should not be stricken.

**IT IS FURTHER RECOMMENDED** that Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Docket Entry 30) be **GRANTED IN PART** to the extent

Plaintiffs' Second, Third, and Fourth claims be dismissed, and **DENIED IN PART** as to

Plaintiffs' First, Fifth, Sixth, Seventh, and Eighth claims.

Joe L. Webster
United States Magistrate Judge

February 28, 2022
Durham, North Carolina