IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| HERMENA MILES BUMPASS, as Administratrix of the Estate of J'Mauri Jysha Bumpass and in her individual capacity, et al., | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )  1:21-CV-394 ) |
| CLARENCE F. BIRKHEAD, in his Individual and official capacity as Sheriff of Durham County, et al., | ) ) ) ) |
| Defendants. | ) |

## ORDER

The Recommendation of the United States Magistrate Judge was filed in accordance with 28 U.S.C. § 636(b) and the Clerk served the Recommendation on the parties. The parties filed objections. After consideration of the record, the Court hereby adopts the Magistrate Judge's Recommendation.

### The Plaintiffs' Objections

The plaintiffs object to the recommendation that the Court should dismiss the two causes of action alleging a substantive due process violation based on a cover-up by law enforcement, Counts Two and Four, and the cause of action against Sheriff Birkhead and Durham County based on an alleged policy of covering up excessive force by deputies, Count Three, for failure to state a claim. Upon *de novo* review, the Court agrees with the Magistrate Judge and adopts the recommendation.

While plaintiffs maintain they are not basing their substantive due process claims on a failure to investigate, the complaint cannot be read any other way. The alleged facts that support these claims occurred after Mr. Bumpass was shot and killed, so his loss of life is not the liberty interest at issue in this claim. The plaintiffs' interest in a fair and impartial investigation is the only "loss of liberty" under the facts alleged, and the plaintiffs do not object to the Magistrate Judge's conclusion that there is no right to criminal investigation of another. Even if the defendants' actions, if proven, would shock the conscience without any protected liberty interest these claims are appropriately dismissed.

The plaintiffs have also not adequately alleged a policy or custom of covering up excessive force by deputies sufficient to state a *Monell* claim against Durham County and Sheriff Birkhead in his official capacity. The plaintiffs contend that "the immediacy, continuity, and consistency of the actions" taken by Sheriff Birkhead and his subordinates immediately after Mr. Bumpass was shot plausibly support an inference that the county had a policy of covering up excessive force and that any cover-up was not *ad hoc*. Doc. 45 at 9. A county can be liable for a deputy's unconstitutional use of excessive force "through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, No. 20-2334, 2022 WL 774732, at *2 (4th Cir. Mar. 15, 2022) (cleaned up). But here all of the plaintiffs' allegations relate to Mr. Bumpass's shooting and the subsequent cover-up, with no other allegations of another occurrence of use of excessive force. *See Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 875 (4th Cir. 1989) (noting that a

"single act of the type here alleged cannot suffice, standing alone, to establish the existence of . . . a policy").

To the extent the plaintiffs contend that Sheriff Birkhead directly authorized and approved the cover-up, *see* Doc. 45 at 5–7, and that the county is liable because of "the decisions of a person with final policymaking authority," *Starbuck*, 2022 WL 774732 at *2, the allegations do not support this contention. There are no allegations that Sheriff Birkhead directed Deputies Osborne and Sharp to use excessive force. And all of the alleged cover-up actions took place after Mr. Bumpass was shot, so Sheriff Birkhead's actions could not be the proximate cause of the use of excessive force by Deputies Sharp and Osborne. *See, e.g.*, *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (holding a plaintiff asserting a § 1983 claim against a municipality "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights").

## The Defendants' Objections

**Excessive Force and Wrongful Death**

The defendants object to the Magistrate Judge's recommendation that the motion to dismiss the first and fifth claims for relief should be denied. The first claim for relief is an excessive force claim against Deputies Sharp and Osborne and the fifth claim is a wrongful death claim against the same defendants.

The defendants contend that the amended complaint does not allege facts sufficient to support the plaintiffs' claim that one of the officers shot the decedent and the other acted in concert with him. But as the Magistrate Judge explained in detail, the

3

plaintiffs have alleged numerous suspicious circumstances surrounding Mr. Bumpass's death and the events thereafter. Taking the plaintiffs' detailed and specific allegations as true, there is well more than a plausible inference that the two officers acted together to use deadly force against Mr. Bumpass without any reason to believe he posed a threat of serious physical harm to them or others.

The defendants' cursory objection based on immunity relies only on the failure to state a claim. It is thus is also without merit at this stage.

The Court agrees with the Magistrate Judge's analysis. Upon *de novo* review, the motion to dismiss these claims will be denied.

**Obstruction of Justice and Intentional Infliction of Emotional Distress**

The defendants object to the Magistrate Judge's recommendation that the motion to dismiss should be denied as to the sixth claim for common law obstruction of justice and as to the seventh claim for intentional infliction of emotional distress against Captain Butler and Deputy Crider. The defendants contend that the allegations specific to Captain Butler and Deputy Crider are insufficient to state a claim.

As to Captain Butler, the defendants contend that the only fact alleged specific to him is his refusal to call in the SBI on the night of Mr. Bumpass's shooting. Doc. 46 at 4–5. While this is the only specific factual allegation that the Magistrate Judge mentioned in connection with his evaluation of these claims, *see* Doc. 43 at 31, there are more factual allegations supporting the plaintiffs' claims in the complaint.

The plaintiffs allege that Captain Butler was the head of the Criminal Investigations Division at the relevant time. Doc. 18 at ¶¶ 61, 245. On the night of Mr.

4

Bumpass's death, a sheriff's investigator told Captain Butler that the SBI should conduct an independent investigation and asked Captain Buter to call the SBI to the scene. *Id.* at ¶ 204. Captain Butler refused. *Id.* The next day, Captain Butler told the investigator to "just say something so the family is comforted." *Id.* at ¶ 206. Instead, in Captain Butler's presence, the investigator expressed concerns about the conflicting physical evidence at the scene. *Id.* at ¶ 207. Despite his knowledge of this conflicting evidence, Captain Butler refused to answer questions from counsel hired by the plaintiffs about why there was electrical tape over Deputy Sharp's in-car camera system, *id.* at ¶ 233; in later conversations, he made false statements about Deputy Sharp's role in a case involving Mr. Bumpass's family member, *id.* at ¶¶ 238–39; and he attempted to bolster the versions of events provided by Deputies Sharp and Osborne. *Id.* at ¶ 240.

These actions, plaintiffs allege, were taken in a deliberate effort to shield Deputy Sharp, Deputy Osborne, and Captain Butler from liability for Mr. Bumpass's death and constitute obstruction of justice and IIED. *Id.* at ¶¶ 316, 322. These allegations and those against other officers that arguably occurred in Captain Butler's presence or with his knowledge, taken as true, give rise to a plausible inference that Captain Butler attempted to obstruct justice and that his acts and omissions constitute extreme and outrageous behavior sufficient to support an IIED claim.

As to Deputy Crider, the plaintiffs allege that Deputy Sharp specifically requested that he come to the scene and that no one else was needed. *Id.* at ¶ 92. Upon arrival, Deputy Crider and Lieutenant Meyers both manually muted the wireless microphones to their in-car recording systems when speaking with Deputies Sharp and Osborne about

5

what happened, in violation of departmental policy. *Id.* at ¶¶ 186–87, 191. Deputy Osborne removed the gun purportedly in Mr. Bumpass's car and placed it in Deputy Crider's car. *Id.* at ¶ 189. These allegations in concert with the specific facts pled about the acts and omissions of other officers that happened in Deputy Crider's presence or with his knowledge, particularly Lieutenant Meyers, give rise to a plausible inference that Deputy Crider deliberately participated in an effort to obstruct justice and cover up a felony assault/murder sufficient to constitute extreme and outrageous behavior.

Upon *de novo* review, the motion to dismiss these claims against these defendants will be denied.

### Remaining Issues

There are no objections to other parts of the Magistrate Judge's recommendation on the motion to dismiss or the motion to strike. Upon review, the Court finds no error.

It is **ORDERED** that the defendants' motion to dismiss the amended complaint, Doc. 30, is **GRANTED in part** and the second, third, and fourth claims for relief are **DISMISSED**. The motion is otherwise **DENIED**.

It is further **ORDERED** that the motion to strike, Doc. 32, is **GRANTED in part** as to the allegation of sexual harassment in paragraph 58 and is otherwise **DENIED.**

This the 29th day of March, 2022.

_____
UNITED STATES DISTRICT JUDGE

6